# EXHIBIT A

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Timothy Chey, Esq<br>2121 Ave of Stars<br>Century City, CA 90067          4243880058<br>TELEPHONE NO.:                    FAX NO.:<br>ATTORNEY FOR *(Name):*  V. George Chey, TA Chey | Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>9/23/2024 1:19 PM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By E. Galicia, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St
MAILING ADDRESS: Los Angeles, CA 90012
CITY AND ZIP CODE:
BRANCH NAME: Central District

CASE NAME:
Chey vs. Keller Williams

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 24STCV24607 |
| | | JUDGE: |
| | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☑ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☒ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☒ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☒ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☒ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☒ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):*  Fraud, Breach of the Duty of Care, Reckless Conduct
5. This case ☐ is ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: 9.23.7.24

TA Chey, Esq (pro per) Victor Chey (pro per)

*Timothy chey Pastor V. George Chey*
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

(TYPE OR PRINT NAME)

CM-010

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence

**CIVIL CASE COVER SHEET**

**CM-010**

Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
    Wrongful Termination (36)
    Other Employment (15)

Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

Elder/Dependent Adult
    Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
    Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE: Chey vs. Chase Bank | CASE NUMBER 24STCV24607 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | **A**<br>Civil Case Cover Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ✖☐✖  A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☒ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: Chey vs. Wells Fargo | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☑ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☑ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☑ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☑ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: Chey vs.Wells Fargoi | CASE NUMBER |
|---|---|

| | **A** Civil Case Cover Sheet Category No. | **B** Type of Action (Check only one) | **C** Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☑ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Chey vs. Wells Fargo | CASE NUMBER |
|---|---|

**Step 4:** **Statement of Reason and Address**:  Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected.  Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: #2 #3 | ADDRESS: 2749 Angus St, LA, CA 90027 |
|---|---|

| CITY: Los Angeles | STATE: CA | ZIP CODE: 90027 |
|---|---|---|

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the _____CENTRAL_____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: _____09.23.24_____

*Pastor V. George Chey*
*T.A. Chey*
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

Electronically FILED by
Superior Court of California,
County of Los Angeles
9/23/2024 1:19 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

**Victor Chey (in pro per)**
**Timothy Chey, Esq (in pro per); State Bar No. 172096**
**Attorney at Law**
**Law Firm of Consumer Justice**
**Fox Tower**
**2121 Avenue of the Stars**
**8th Floor**
**Century City, CA 90067**
**LawFirmofConsumerJustice@Activist.com; Tel: 424 388 0058**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES

|  |  |
|---|---|
| **Victor Chey,** <br><br> **Timothy Chey,** <br><br>        **Plaintiffs,** <br><br>    **vs.** <br><br><br> **JPMORGAN CHASE BANK, N.A., a** <br> **business entity; J.P. MORGAN** <br> **SECURITIES, LLC; J.P. MORGAN** <br> **CLEARING CORP.; DAVID KIM;** <br> **LACIE CHEY, and DOES 1 through 10** <br> **inclusive,** <br><br>      **Defendants** | Case No: ⟨24STCV24607⟩ <br><br> **VICTOR CHEY AND TIMOTHY CHEY'S COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL; EXHIBITS; SUMMONS; DECLARATIONS** <br><br> 1) **FRAUD AND DECEIT** <br> 2) **FINANCIAL ELDER ABUSE** <br> 3) **BREACH OF FIDUCIARY DUTY OF LOYALTY** <br> 4) **SECURITIES FRAUD (Cal. Corp. Code§ 25401)** <br> 5) **FRAUD BY INVESTMENT ADVISER (Cal. Corp. Code § 25235)** <br> 6) **FRAUDULENT CONCEALMENT** <br> 7) **FRAUDULENT MISRESPRESENTATION (Civil Code §1709)** <br> 8) **VIOLATION OF INVESTMENT ADVISORS ACT** <br> 9) **VIOLATION OF BUSINESS AND PROFESSIONS CODE §10232.45 (UNLAWFUL, UNFAIR AND DECEPTIVE BUSINESS PRACTICES)** <br> 10) **BREACH OF WRITTEN CONTRACT** <br> 11) **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |

|  |  |
|---|---|
| ) | **12) VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT (Civil Code §1750 et seq.)** |
| ) | **13) UNFAIR COMPETITION (Cal. Bus. & Prof Code §17200)** |
| ) | **14) CIVIL CONSPIRACY** |
| ) | **15) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |
| ) | **16) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** |
| ) | **17) NEGLIGENT SUPERVISION** |
| ) | **18) WRONGFULCONVERSION / MAIL FRAUD** |
| ) | **19) VIOLATION OF THE LANHAM ACT** |
| ) | **20) BREACH OF ORAL CONTRACT** |
| ) | **21) BREACH OF DUTY OF CARE** |
| ) | **22) INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS** |
| ) | **23) WILLFUL, WANTON, AND RECKLESS CONDUCT** |
| ) | **24) GROSS NEGLIGENCE** |
| ) | **25) PROMISSORY ESTOPPEL** |
| ) | **26) PREJUDGMENT WRIT OF ATTACHMENT** |
| ) | **27) VIOLATION OF THE RICO STATUTE** |
| ) | **28) RESTITUTION BASED ON QUASI-CONTRACT / UNJUST ENRICHMENT** |
| ) | **29) PUNITIVE DAMAGES** |
| ) | **30) ACCOUNTING** |
| ) | **31) CONSTRUCTIVE TRUST** |

## <u>DEMAND FOR A JURY TRIAL</u>

Plaintiffs, as individuals, for their Complaint against **JPMORGAN CHASE BANK, N.A., a business entity; DAVID KIM, LACIE CHEY, and DOES 1 through 10 inclusive,** demand a jury trial and allege as follows:

### <u>JURISDICTION AND VENUE</u>

1) Venue is proper in this judicial district, pursuant to California Code of Civil Procedure § 395(a). Defendants reside and/or transact business in the County of Los Angeles, and are within the jurisdiction of this Court for purposes of service of process. Plaintiffs reside in California.

2) Venue is proper because the unlawful acts and practices alleged herein occurred in the City of Los Angeles, County of LA, State of California, which is within this judicial district.

## **PARTIES**

3) Plaintiff Pastor Victor Chey ("Pastor Vic"), in pro per, resided in Irvine, California now and at all times during Defendant's wrongful conduct.

4) Plaintiff Timothy Chey ("Tim"), in pro per, resided in Los Angeles, California at all times during Defendant's wrongful conduct.

5) Defendant JPMORGAN CHASE BANK, N.A., is a national association authorized to originate banking, the internet and in their transactions, and do business in the State of California. On information and belief, Defendant JPMORGAN is a Ohio-based bank with its principal place of business in Ohio purportedly.

6) Plaintiff is informed and believes that Defendant J.P. MORGAN SECURITIES, LLC is a Delaware corporation with its principal place of business in New York City, New York. Defendant J.P. Morgan Securities, Inc. is, and at all times was, qualified to do business in and maintained an office in the city and county of Los Angeles, California. Plaintiff is further informed and believes that J.P. Morgan Securities, Inc. employs more than four hundred (400) persons in California.

7) Plaintiff is informed and believes that Defendant J.P. MORGAN CLEARING CORP.**;** is a Delaware corporation with its principal place of business in New York City, New York. Defendant J.P. Morgan Securities, Inc. is, and at all times was, qualified to do business in and maintained an office in the city and county of San Francisco, California. Plaintiff is

further informed and believes that J.P. Morgan Securities, Inc. employs more than four hundred (400) persons in California.

8) Defendant DAVID KIM ("Mr. Kim") resides in the Los Angeles County area and works on Sunset and Vermont Ave in Los Angeles, California.

9) Defendant LACIE CHEY ("Ms. Chey") resides in the Los Angeles County area and works on Sunset and Vermont Ave in Los Angeles, California.

10) Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 100, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend the complaint to allege the true names and capacities of said Defendants when the same has been ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Defendants is responsible in some manner for the acts complained of herein. Unless otherwise stated, all references to named Defendants shall include the Doe Defendants as well.

## **INTRODUCTION**

11) The banking industry has fallen to new lows where many banks are being sued almost daily for elder abuse. Yet they do nothing to change.

12) Defendants, collectively, did outrageous abuse against an elderly dying man by refusing to give his money from his bank. It's simply not done. But in this day in and age, anything apparently goes. But Plaintiffs will fight to bring justice to this matter if it takes a lifetime.

13) Plaintiffs and their elderly late father were defrauded by Defendant JPMorgan and JPMorgan Securities, LLC.

14) Defendants J.P. Morgan Securities and JPMorgan Chase Bank refused to help an elderly dying man get his funds out to help with his medical care as he was dying of 4th stage stomach and pancreatic cancer.

15) The funds were those of elderly George, the father of Plaintiffs Tim and Pastor Victor and the living trust.

16) Despite Tim being an attorney, co-trustee, and having a power of attorney, Chase Bank managers Defendant David Kim and Defendant Lacie Chey refused to help elderly George get his funds and hung up on elderly George. Mr. Kim was elderly George's own banker for many years but treated George and his children with utter contempt in the end when George was dying of cancer.

17) These actions shame the entire banking industry and caused a dying man to suffer and possibly have an early death.

18) Plaintiffs are filing this suit to protect elderly seniors and protect elderly dying people from being hurt by their own banks when they need their funds.

19) There is zero excuse what Defendant J.P. Morgan Securities (JP MORGAN SECURITIES), JPMorgan Chase Bank (JPMORGAN CHASE BANK) and Defendants David Kim and Defendant Lacie Chey did to a dying man by refusing to let elderly George get access to his much-needed cash from his savings at JPMORGAN CHASE BANK and his JP MORGAN SECURITIES account while he was dying and needed the funds.

20) In addition, Plaintiffs Tim and Pastor Victor uncovered further sinister behavior in that George's account was drained from over $14 million to $30,000. JP MORGAN

SECURITIES has refused to issue any statements to the Plaintiffs despite being Co-Trustees of George's trust and sending them subpeonas (See EXHIBIT C).

21) Defendant's actions caused enormous actual damages and severe emotional distress to elderly George and his two sons Tim and Pastor Victor.

22) Defendants violated every banking regulation of the California Banking code and the California Business and Professions code on multiple counts.

23) Plaintiffs strongly believe this complaint is a just and fair way to seek remuneration and hopefully legitimate changes in the behavior and methods of unscrupulous, greedy, and dishonest banks in the LA metropolitan area and the U.S. and seek justice in the courts in front of an Honorable Judge and a fair jury.

24) In essence, Defendants breached a coveted trust honored by centuries in the banking industry: Customers should have access to their funds.

25) This is simply an outrageous and shocking example of Defendants unethical greed and illegal disregard for the best interests of their client, a textbook case of conflict of interest, and the very reason there are laws preventing this very thing from happening to innocent customers of large banks.

26) Elderly George died a broken man in 2022 as a partial result of Defendant's actions, in addition extreme emotional distress to the children Tim and Pastor Victor.

27) Plaintiffs were deprived of their legal rights and possibly their constitutional rights to be free from being defrauded by losing their precious father for no reason other than Defendants wanted to prevent customers from withdrawing from their accounts.

28) In addition, Plaintiffs Tim and Pastor Victor discovered George's account was drained from possibly over $14 million to $30,000. It shocked elderly George to the core.

29) Elderly George said he always thought his accounts at JPMORGAN CHASE BANK and JP MORGAN SECURITIES were secure and never gambled on any exotic or high-risk stocks.

30) Defendants have never apologized for their conduct and remain unapologetic.

31) <u>Instead of helping a dying elderly man, Defendants went after the children of a dying man and pegged them as scammers and abusers.</u>

32) Plaintiff Tim is a well-known faith-based director and a Harvard alumnus. His brother Pastor Victor has been a pastor of a church in Irvine for over 30 years. Victor is a Biola University and Talbot Seminary graduate.

33) The Honorable Court must not allow Defendants to walk away from this, callous, illegal, and unethical behavior.

34) Financial elder abuse causes irreparable and devastating harm to its elderly victims, and it has done so here. By the time the financial elder abuse is discovered, the perpetrator has usually spent or otherwise dissipated the elderly victims's assets. Efforts at restitution therefore, are likely to result in partial recovery at best. The elderly victim often experiences a permanent decline in his or her standard of living. Many victims suffer even more from feelings of betrayal that typically accompany financial abuse.

35) Prosecutors call financial exploitation of the elderly a "violent crime," not because of any physical force used by the wrongdoer, but because of its lethal effects. According to a leading resource on elder abuse, published for California Judicial Officers, the impacts of abuse include the following:

- Early morbidity for the elder, with the risk of death three times higher than fornon-victims;

- Significant health effects, including declining functional abilities; this often leads to progressive dependency, social isolation, a sense of helplessness, and a cycle of worsening stress and psychological decline.

See, "Elder Abuse Pocket Reference - A Medical(Legal Resource For California Judicial Officers." a joint publication by the Judicial Council of California, Center of Excellence on Elder Abuse and Neglect and Program in Geriatrics, UC Irvine School of Medicine (2012), page 8.

## STATEMENT OF FACTS

1) Both Plaintiffs – Tim and Pastor Victor Chey – are children and co-trustees of elderly George Chey.

2) Or or about June 2021 to August 2021, elderly George began to fall to the ground and went to the hospital where they uncovered 4th stage stomach and pancreatic cancer.

3) He needed full-time caregivers if he were to stay in his house. This medical care cost over $16,000 a month between two of the caregivers.

4) Immediately George's two sons Tim and Pastor Victor began doing deep dives into George's accounts and saw funds were available at Defendants J.P. Morgan Securities and JPMorgan Chase Bank.

5) Tim is a faith-based filmmaker and was not wealthy enough to handle this monthly expense. He is also a pro-bono attorney helping ministries and did not make much as a normal lawyer would.

6) Neither was Pastor Victor who is a full-time pastor at a Baptist church.

7) The father of the Plaintiffs was a distinguished man who helped the city of LA by creating a bank to serve and assist all members of the community, and raising millions of dollars for the Good Samaritan Hospital as the advisor to the president. He was also a

devout man of faith who did all he could to serve the Southern California community at large. Their father was the chairman and founder of a NASDAQ-traded company

**Elderly George Could Not Access Any Funds Out of Either JPMorgan Chase Bank or J.P. Morgan Securities as He Was Dying of 4th Stage Cancer**

8) On or about September 27, 2021, Tim and his brother Pastor Victor took their elderly father George into the local Chase Bank to withdraw George's funds for George's medical care.

9) They were immediately met by Defendant David Kim who knew and greeted elderly George.

10) Defendant Kim then asked to see the driver's licenses of Tim and Pastor Victor who gave Mr. Kim their IDs. Both Tim and Pastor Victor thought this was an odd request as they were just helping their dad who was using a walker.

11) He asked George what he was doing at the bank and George said he wanted to withdraw funds. Immediately, Mr. Kim's face dropped and he said to come with him.

12) Defendant Kim then had the Tim, Victor, and George sit in his cubicle.

13) Defendant Kim then asked what George wanted to do again.

14) Baffled, George explained he needed funds for his full-time caregivers. Tim also piped in that George fell and needed care (not that anyone has to explain anything to a bank manager).

15) Defendant Kim then strangely said he needed to get someone. He then came back with the branch manager Defendant Lacie Chey (no relation to Plaintiffs) who approached.

16) George again told Defendant Lacie that he needed cash out of his checking account to help with his health as he had cancer.

17) Defendant Lacie looked at Defendant Kim and shook her head. She then told elderly George she couldn't help.

18) Tim then stood up and asked why.

19) Defendant Lacie and Defendant Kim were both silent and then said if there's anything more they could do for the Chey family.

20) "Are you saying our father is not allowed to get his funds out," Pastor Vic asked in disbelief.

21) "That's correct," said Defendant Kim.

22) Elderly George was heart-broken as they left the bank.

23) **Plaintiffs were left stunned by the actions of Defendant Chase Bank.**

24) Immediately upon getting home, Tim emailed Chase Bank to let them know what was going on.

25) Instead of Defendant Chase Bank doing the right thing and getting elderly George his funds, the bank instead hired Greenberg Taurig a top law firm in Century City, California to respond.

26) Instead of Greenberg Taurig responding to try to resolve the issue, the Greenberg attorney tried to escalate the issue.

27) In fact, Greenberg Taurig may have called the Welfare department as soon after a strange visitor came telling elderly George they were from the city's welfare department and someone had called in to have them come.

28) If this is true, Plaintiffs will file a $100 million lawsuit against Greenberg Taurig and their attorneys.

29) In the meantime, Tim and Victor had to find a way to pay for the full-time caregivers who were going to give care to elderly George by helping him to the bathroom.

30) As elderly George still had his JPMorgan Private Client accounts, George called his advisor but they did not return his calls.

31) Next Tim tried. No one responded. The advisor's name was on the statement.

32) Tim, an attorney, then emailed Dylan Fallik, an attorney at JPMorgan Chase (See EXHIBIT A-1):

*"Law Firm" <lawfirmofconsumerjustice@activist.com>*
*"Fallik, Dylan" <dylan.fallik@jpmchase.com>*
*Sep 27, 2021 5:19:02 PM*
***Hi Mr./Ms. Fallik:***

***We have a very very serious problem on our hands.***

***I have the Power of Attorney for my father George S. Chey***

***The branch of Chase Private Client Group and the main banking branch have committed stark elder abuse – a complete violation of Caifornia law - by refusing to help us in any way - in fact, two of them just stood there refusing to help my elderly father to check on his acccount.***

***Then TODAY, we inquired with Chase Private Client Group - same branch office 1600 N. Vermont Ave, Hollywood CA 90027 (323 662 4126) and again same response - zero help.***

*The balance on the Chase/JP Morgan account is $503,000. This is NOT a small amount and my father desperately needs these funds to help with his costly health care. The Chase Private account is: 963-37178 You are welcome to call me anytime: 310 695 7119 - but this must be resolved by next Monday, October 4, 2021 or I will be forced to file an Ex Parte Application with the LA Superior Court which would be the most severely ridiculous action I've ever filed in my 27 years of practicing litigation law.*

*Very truly yours,*
*Timothy A. Chey, Esq*
*Attorney at Law*
*Law Offices of Consumer Justice*
*Arco Tower*
*1055 West 7th Street*
*33rd Floor (Penthouse)*

*Downtown LA, CA 90017*

33) Chase Bank then hired Greenberg Taurig and Counsel Karin Bolmholdt ignored Plaintiff Tim's demand to open his father's account so his dying dad could access the funds for his caregivers.

34) Ms. Bolmholt – instead of defusing the situation and finding a solution to get a dying man his funds – kept emailing Plaintiff to stop communicating with the Chase office – it was a playbook out of a typical non-caring attorney defending her Fortune 500 client. It was beyond litigation privilege but a malicous act against a dying elderly man (see EXHIBIT F).

35) Plaintiff Tim to help his dying father had no choice but to email an Ex Parte notice to Chase Bank and Attorney Bolmholt. <u>He should never had had to do this.</u>

36) In the meantime, someone at either Chase Bank or Greenberg Taurig – the most vicious and despicable means – actually called the LA Welfare Department and had a representative actually come to the elderly George residence because she received a call of possible elder abuse.

37) It was an astonishing and vile act. Defendants were committing elder abuse and actually tried to deflect it by accusing Pastor Victor and Tim of elder abuse.

38) More discovery will determine who called the LA Welfare office and whoever did will be added to this lawsuit including Greenberg Taurig if this firm called and falsely reported elder abuse.

39) On October 14, 2022 – more than 3 weeks since JPMorgan Chase first learned of this dire situation -  Ms. Bolmholt wrote that Chase Bank wished to terminate its banking

relationship with elderly George for no reason and that Plaintiff Tim was not allowed to enter any Chase Bank (see Exhibit G).

40) It was the most outrageous and horrific day in the life of both Plaintiffs. No one deserves this treatment especially from a large publically-traded bank.

41) On February 14, 2022, elderly George passed away a heartbroken man.

42) These horrific actions by banks must end.

43) Plaintiffs understand the need to protect against scammers but banks cannot and do not have any powers to tell family members of a dying man they could be possible scammers.

**On or about July 2022, Plaintiffs Realized They were Being Defrauded By Chase Bank and JPMorgan Private Client**

44) On or about July 2022, Plaintiffs began to realize they were being defrauded in a massive fraud by Chase Bank and JP Morgan Private Client.

45) They discovered JP Morgan Chase documents that showed massive amounts in the millions down to zero.

46) Despite Plaintiff Tim and his father calling Ms. Martinez and later other advisors, no one returned their calls to explain or to send needed reports.

**Elderly George Died While J.P. Morgan Securities Still Withheld His Funds**

47) Elderly George was heartbroken and would die two months later.

48) Plaintiffs Tim and Pastor Victor believe their father would have lived longer but for the incessant abuse of which Defendant J.P. Morgan Securities helped contribute to this financial and physical elder abuse by refusing to give elderly George his money.

49) During the next several weeks, Plaintiff Tim had to deal with the most outrageous stall tactics by Defendant J.P. Morgan Chase bank to simply get his father's funds.

50) Tim spend countless hours during the four months – maybe over 1500 hours – to simply close his father's account. His father again would die two months later – a heartbroken man due to J.P. Morgan Chase's greed and unending torment to access his funds.

**Defendant J.P. Morgan Chase Bank has a History of Abuse Towards its Loyal Customers**

51) This is not the first time Defendant J.P. Morgan Securities flipped off their loyal customers.

52) JPMorgan Chase's involvement in major fraud scandals has left a lasting mark on its reputation and the financial industry as a whole. The bank's participation in facilitating the deceptive practices of Enron, Jeffrey Epstein, WorldCom, and Bernie Madoff's Ponzi scheme underscores broader issues of corporate governance and ethical responsibility within the banking sector.

53) JP Morgan Chase has been sued multiple times for elder abuse since 2000.

54) On or about November 20, 2022, Plaintiff Tim again sent J.P. Morgan Securities another email to plead with them to send all the statements from their elderly father. Plaintiff Tim felt J.P. Morgan Securities was again defrauding Tim by stallling and delaying.

55) Plaintiff Tim will be filing a complaint with the U.S. Department of Justice after this Complaint is filed.

56) It gets worse still.

**Tim and Pastor Victor Then Uncover Possible Massive Fraud by JPMORGAN CHASE BANK and JP MORGAN SECURITIES**

57) After elderly George passed away in February 14, 2022, Plaintiff Tim and Victor began doing due dillegence on their father's papers and discovered their father's built up life

savings of over $14,000,000 dwindled away to $35,863.35 by September 2021 (See Exhibit F).

58) Plaintiffs believe it could be in the millions, but Defendants refuse to turn over any records even by subpoena (See Exhibit G).

59) On or about May 12, 2022, Plaintiffs found huge amounts missing from their father's account earmarked for the trust.

60) On May 13, 2022, Plaintiff Tim emailed counsel to Defendant J.P. Morgan Securities – requesting all of the statements as they believed their father was scammed (see EXHIBIT L).

61) Defendant's counsel did not answer the final email.

62) On December 22, 2022, Plaintiff Tim sent a subpoena to J.P. Morgan Securities and J.P. Morgan Securities refused to send the documents to Plaintiff Tim.

63) As to date, J.P. Morgan Securities has not responded with any of the demanded documents.

64) <u>Defendants never apologized for their misconduct</u>.

65) Plaintiffs have smoking-gun evidence of this (see Exhibits A-H) and several key witnesses who will testify at trial, including officers at local branches of J.P. Morgan Securities.

66) Plaintiff Tim clearly stated to Defendants how important it was for elderly George to live at his house. He was moved to a temporary facility as Plaintiffs had no funds of their own.

67) Further, Defendants J.P. Morgan Securities and Defendant David Kim violated **Penal Code 487**. A criminal defendant violates Penal Code Section 487 when they attempt to

defraud another person out of money or property by way of false representations or promises.

68) To prove attempted grand theft by false pretense in financial transactions, the following elements must exist:

**1. The defendants knowingly and intentionally attempted to deceive a owner out of money by false or fraudulent representation or pretense;**

**2. The defendants did this intending to persuade the owner to let the defendant have ownership and possession of funds;**

**3. The defendants attempted to not let the owners have the funds because they relied on the defendant's representation or pretense;**

**4. AND the funds in question was worth more than $950.**

69) Plaintiffs lost over $14 million in actual damages because of Defendant's criminal-coded actions. In total, the loss could be over $15 million which includes the vanished funds, time and travel expenditures. More discovery is needed. Thorough discovery will be sent in October 2024. In the meantime, Plaintiffs pray J.P. Morgan Securities will do the right thing and get to the bottom of these missing funds and help right a terrible wrong without 4 years of intense litigation.

70) All of these Defendants will be deposed and put on the witness stand during the trial.

71) Plaintiff Tim and his brother endured one of the most excruciating and crushing events of their entire life: Being victimized in a very large financial institution due to the complete, and total fraud perpetrated by the Defendants, who chose to ignore the best interests of their client in favor of enriching themselves.

72) Plaintiff believes they were also possible victims of racial discrimination in complete violation of the Unruh Act.

73) Plaintiff Timothy Chey, a Harvard and USC alumnus, is a well-respected attorney, philanthropist, film producer, and director of 16 films with Academy-Award winning actors.

74) Timothy is also one of the top faith-based writer/directors in the U.S. of 16 feature films, including 'David and Goliath' (Jerry Sokolosky), 'The Genius Club' (Tom Sizemore, Stephen Baldwin) 'Suing the Devil' (Malcolm McDowell, Tom Sizemore, Corbin Bernsen), 'Freedom' (Cuba Gooding, Jr., Sharon Leal, William Sadler), Fakin' Da Funk (Pam Grier, Bo Jackson, Ernie Hudson), "Slamma Jamma" (Michael Irvin, Jose Canseco), and 'The Islands' (John Savage, Mira Sorvino), yet he was forced to take time off from his very busy schedule and was left with no alternative but to file this action in the wake of this overt and quite scandalous conduct by the Defendants.

75) Timothy has also made guest appearances on Fox News, NBC, TBN, and other national TV shows. His work has been disseminated in the Wall Street Journal, NY Times, LA Times, Roger Ebert, CNN, ABC Family, Lifetime, USA Networks, TRU, History Channel, and over 100 more media outlets and his work has reached over 86 million households around the world on TV.

76) Pastor Victor has been a pastor for over 30 years at a Baptist Church.

77) Their father George is the former Chairman and founder of a company that is traded on NASDAQ. George was a well-respected in the LA community and served on the Board of Directors of Azsua Pacific University and Good Samaritan Hospital. He was friends

with Mayor Tom Bradley, Governor George Dukemejian, et al; and founded a library at USC.

78) Plaintiff Tim declares also that in his 50+ years he has never been subjected to the type of horrific conduct by any bank of any state in the U.S..

79) Plaintiff Tim is also a consumer advocate who is filing this case to protect innocent people from having to go through what he endured.

80) Defendants' conduct giving rise to this dispute, as further detailed below, is more of the same self-serving, dishonest, wrongdoing summarized by statements above.

81) <u>As of the present day, J.P. Morgan Securities has still not released any of the documents showing where the missing funds from the JPMorgan Private Client accounts for the trust disappeared to. This is shameful behavior from a major publically-traded company.</u>

82) <u>Defendant David Kim has never been in contact with his client George and his children after that ill-fated day.</u>

83) Plaintiffs believe this is wide-reaching conspiracy that reaches every corner of the C-Suites at Defendant J.P. Morgan Securities.

84) Plaintiffs have been helping non-profits since 1981. Tim states for the record, and under the penalty of perjury (that carries a jail sentence) that he has never filed a legal complaint against any bank in his entire life.

85) Plaintiff will also file a prejudgment writ of attachment to freeze all assets of all Defendants and any dummy or shell companies that the owners have possibly set up and asks the court to allow cameras into the courtroom to allow the media to witness the trial.

86) Plaintiff asks the court for $750,000 minimum damages for each action and punitive damages against Defendants for their extraordinary disgraceful conduct and total renumeration of the more than $14 million (to possibly $15 million) loss.

87) Plaintiff requests the court to expedite discovery at all ends and set a trial date for late-2025 to early-2026.

88) Plaintiff Tim and Pastor Victor also suffered extreme emotional distress. Plaintiffs believe the incident has affected their physical health permanently including Tim increasing his diabetes as well and prevented him from finishing important film projects. More will be ascertained during deep discovery.

89) Plaintiffs alert the Court in advance that they will:

    a. Send interrogatories, admissions, and production of all documents to all Defendants by October 30, 2024

    b. File motions to compel with sanctions on any evasive answers on December 20, 2024

    c. Set depositions starting February 5, 2025 with Defendant David Kim, Lacie Chey, and all the JP Morgan Private Client advisors of George and all of elderly George's bankers in the past 10 years at J.P. Morgan Securities

    d. Plaintiff will move the Court for an early trial date in September 2025 or March 2026 at the very maximum with minimal motions in limine as the issues in this case are crystal-clear.

90) All acts or omissions alleged to have been engaged in intent to injure plaintiff or with a willful and conscious disregard for the rights and safety of plaintiff, and were malicious and oppressive, entitling plaintiff to recover punitive damages from defendants.

91) Plaintiffs again intends to bring justice to this case if it takes them 20 years. They will not stop until all the parties are brought to justice before a jury of peers.

# FIRST CAUSE OF ACTION
# FRAUD AND DECEIT

[As Against All Defendants]

92) Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as if fully set forth herein.

93) Plaintiffs have 'smoking-gun' evidence that Defendants acted in union and conspiracy to commit fraud. Plaintiffs will file any Motions to Compel with sanctions as Plaintiffs are aware of the possible evasive deceit occurring in the court of law.

94) Plaintiffs were fully cognizant of their rights during the entire fraud. They thought they were in good hands with Defendants. This was due to Defendant's fraudulent, willful, reckless, unapologetic, and wanton conduct.

95) Or or about June 2021 to August 2021, elderly George began to fall to the ground and went to the hospital where they uncovered 4th stage stomach and pancreatic cancer.

96) He needed full-time caregivers if he were to stay in his house. This medical care cost over $16,000 a month between two of the caregivers.

97) Immediately George's two sons Tim and Pastor Victor began doing deep dives into George's accounts and saw funds were available at Defendants J.P. Morgan Securities and JPMorgan Chase Bank.

98) Tim is a faith-based filmmaker and was not wealthy enough to handle this monthly expense. He is also a pro-bono attorney helping ministries and did not make much as a normal lawyer would.

99) Neither was Pastor Victor who is a full-time pastor at a Baptist church.

100)     The father of the Plaintiffs was a distinguished man who helped the city of LA by creating a bank to serve and assist all members of the community, and raising millions of dollars for the Good Samaritan Hospital as the advisor to the president. He was also a devout man of faith who did all he could to serve the Southern California community at large. Their father was the chairman and founder of a NASDAQ-traded company

**Elderly George Could Not Access Any Funds Out of Either JPMorgan Chase Bank or J.P. Morgan Securities as He Was Dying of 4th Stage Cancer**

101)     On or about September 27, 2021, Tim and his brother Pastor Victor took their elderly father George into the local Chase Bank to withdraw George's funds for George's medical care.

102)     They were immediately met by Defendant David Kim who knew and greeted elderly George.

103)     Defendant Kim then asked to see the driver's licenses of Tim and Pastor Victor who gave Mr. Kim their IDs. He asked George what he was doing at the bank and George said he wanted to withdraw funds. Immediately, Mr. Kim's face dropped and he said to come with him.

104)     Defendant Kim then had the Tim, Victor, and George sit in his cubicle.

105)     Defendant Kim then asked what George wanted to do again.

106)     Baffled, George explained he needed funds for his full-time caregivers. Tim also piped in that George fell and needed care (not that anyone has to explain anything to a bank manager).

107)     Defendant Kim then strangely said he needed to get someone. He then came back with the branch manager Defendant Lacie Chey (no relation to Plaintiffs) who approached.

108)     George again told Defendant Lacie that he needed cash out of his checking account to help with his health as he had cancer.

109)     Defendant Lacie looked at Defendant Kim and shook her head. She then told elderly George she couldn't help.

110)     Tim then stood up and asked why.

111)     Defendant Lacie and Defendant Kim were both silent and then said if there's anything more they could do for the Chey family.

112)     "Are you saying our father is not allowed to get his funds out," Pastor Vic asked in disbelief.

113)     "That's correct," said Defendant Kim.

114)     Elderly George was heart-broken as they left the bank.

115)     **Plaintiffs were left stunned by the actions of Defendant Chase Bank.**

116)     Immediately upon getting home, Tim emailed Chase Bank to let them know what was going on.

117)     Instead of Defendant Chase Bank doing the right thing and getting elderly George his funds, the bank instead hired Greenberg Taurig a top law firm in Century City, California to respond.

118)     Instead of Greenberg Taurig responding to try to resolve the issue, the Greenberg attorney tried to escalate the issue.

119)    In fact, Greenberg Taurig may have called the Welfare department as soon after a strange visitor came telling elderly George they were from the city's welfare department and someone had called in to have them come.

120)    If this is true, Plaintiffs will file a $100 million lawsuit against Greenberg Taurig and their attorneys.

121)    In the meantime, Tim and Victor had to find a way to pay for the full-time caregivers who were going to give care to elderly George by helping him to the bathroom.

122)    As elderly George still had his JPMorgan Private Client accounts, George called his advisor but they did not return his calls.

123)    Next Tim tried. No one responded. The advisor's name was on the statement.

124)    Tim, an attorney, then emailed Dylan Fallik, an attorney at JPMorgan Chase (See EXHIBIT A-1):

*"Law Firm" <lawfirmofconsumerjustice@activist.com>*
*"Fallik, Dylan" <dylan.fallik@jpmchase.com>*
*Sep 27, 2021 5:19:02 PM*
**Hi Mr./Ms. Fallik:**

**We have a very very serious problem on our hands.**

**I have the Power of Attorney for my father George S. Chey**

**The branch of Chase Private Client Group and the main banking branch have committed stark elder abuse – a complete violation of Caifornia law - by refusing to help us in any way - in fact, two of them just stood there refusing to help my elderly father to check on his acccount.**

**Then TODAY, we inquired with Chase Private Client Group - same branch office 1600 N. Vermont Ave, Hollywood CA 90027 (323 662 4126) and again same response - zero help.**

*The balance on the Chase/JP Morgan account is $503,000. This is NOT a small amount and my father desperately needs these funds to help with his costly health care. The*

*Chase Private account is: 963-37178 You are welcome to call me anytime: 310 695 7119 - but this must be resolved by next Monday, October 4, 2021 or I will be forced to file an Ex Parte Application with the LA Superior Court which would be the most severely ridiculous action I've ever filed in my 27 years of practicing litigation law.*

*Very truly yours,*
*Timothy A. Chey, Esq*
*Attorney at Law*
*Law Offices of Consumer Justice*
*Arco Tower*
*1055 West 7th Street*
*33rd Floor (Penthouse)*
*Downtown LA, CA 90017*

125)     Chase Bank then hired Greenberg Taurig and Counsel Karin Bolmholdt ignored Plaintiff Tim's demand to open his father's account so his dying dad could access the funds for his caregivers.

126)     Ms. Bolmholt – instead of defusing the situation and finding a solution to get a dying man his funds – kept emailing Plaintiff to stop communicating with the Chase office – it was a playbook out of a typical non-caring attorney defending her Fortune 500 client. It was beyond litigation privilege but a malicous act against a dying elderly man (see EXHIBIT F).

127)     Plaintiff Tim to help his dying father had no choice but to email an Ex Parte notice to Chase Bank and Attorney Bolmholt. He should never had had to do this.

128)     In the meantime, someone at either Chase Bank or Greenberg Taurig – the most vicious and despicable means – actually called the LA Welfare Department and had a representative actually come to the elderly George residence because she received a call of possible elder abuse.

129)     It was an astonishing and vile act. Defendants were committing elder abuse and actually tried to deflect it by accusing Pastor Victor and Tim of elder abuse.

130)     More discovery will determine who called the LA Welfare office and whoever did will be added to this lawsuit including Greenberg Taurig if this firm called and falsely reported elder abuse.

131)     On October 14, 2022 – more than 3 weeks since JPMorgan Chase first learned of this dire situation -  Ms. Bolmholt wrote that Chase Bank wished to terminate its banking relationship with elderly George for no reason and that Plaintiff Tim was not allowed to enter any Chase Bank (see Exhibit G).

132)     It was the most outrageous and horrific day in the life of both Plaintiffs. No one deserves this treatment especially from a large publically-traded bank.

133)     On February 14, 2022, elderly George passed away a heartbroken man.

134)     These horrific actions by banks must end.

135)     Plaintiffs understand the need to protect against scammers but banks cannot and do not have any powers to tell family members of a dying man they could be possible scammers.

**On or about July 2022, Plaintiffs Realized They were Being Defrauded By Chase Bank and JPMorgan Private Client**

136)     On or about July 2022, Plaintiffs began to realize they were being defrauded in a massive fraud by Chase Bank and JP Morgan Private Client.

137)     They discovered JP Morgan Chase documents that showed massive amounts in the millions down to zero.

138)     As a direct and proximate cause of the aforementioned fraudulent acts of Defendants, Plaintiffs were deprived of their legal rights and possibly their constitutional rights to be free from being defrauded and losing possible millions for no reason other

than Defendants wanted to churn their commissions by taking advantage of a 90-year old man who doesn't recall ever approving any transactions at JP Morgan Securities.

139)     The severe emotional trauma which Plaintiff Tim and his brother Pastor Vic sustained was a foreseeable result of the actions of all Defendants, the individual Defendants and Defendant J.P. Morgan Securities who improperly trained, supervised and controlled the agents  who possibly acquiesced in and ratified the deprivation of constitutional rights and/or ignored the fraud of co-Defendants, as more fully and specifically alleged in the Factual Allegations, *supra*. More discovery and depositions of all defendants and interrogatories is needed to flesh out what transpired at the corporate headquarters of JP Morgan Chase.

140)     Defendants either performed the acts stated herein and are individually liable for their individual acts; and/or Defendant J.P. Morgan Securities and its agents performed the acts stated herein during the course and scope of their employment, acting under the color of law, apparent authority and are individually liable for those acts; and/or Defendants are vicariously liable for each other; and/or Defendants are liable for each other under the doctrine of respondeat superior; and/or Defendants are liable under conspiracy of each other. California Penal Code §830.31, §835(a) §836, *Inouye v. County of Los Angeles*, (1995) 30 Cal.App.4th 278, 35 Cal.Rptr.2d 367; *Graham v. Connor*, (1989) 490 S. 386 1989.

141)     As a result of Defendants' conduct, Plaintiff incurred general and special damages, including but not limited to, damages for medical bills, lost wages, and loss of earning capacity. As a proximate result of the wrongful, malicious and fraudulent acts of defendants, and the incidents caused, plaintiffs again suffered physical and mental trauma

and experienced shock and injury to their nervous system and was injured in their health, strength and activity, suffering extreme and severe mental anguish and physical pain, anxiety, humiliation and emotional distress. Plaintiff Tim suffered physical pain and disability and severe emotional trauma, worry, anxiety, humiliation, and distress. He has been unable to continue making his one true love of filmmaking. He has been to doctors and counselors regarding this horrific scam and the loss of possibly $14 million.

142) The conduct of Defendants, in their individual capacities, was wanton, malicious, and oppressive, and warrants imposition of general and special damages against Defendants, and punitive damages.

143) Plaintiff Tim has also suffered serious bouts of diabetes, depression, and stress brought on by the fraud of Defendants. He has been to clinical counselors already.

144) By reason of the aforementioned acts and omissions of defendants, Plaintiffs have incurred and will incur in the future medical and related expenses, past and future lost earnings, and other special and general damages, in an amount according to proof, but in excess of the jurisdictional limits of this court, notwithstanding the loss of possibly $14 million on actual damages.

## SECOND CAUSE OF ACTION
## FINANCIAL ELDER ABUSE

[As Against All Defendants]

145) Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as if fully set forth herein.

146) As an "elder" within the meaning of Welfare & Institutions Code §15610.27,

Plaintiff George was entitled to the heightened rights and special statutory protections provided by California's Elder and Dependent Adult Civil Protection Act ("EADACPA") set forth in Welfare & Institutions Code § 15600 et seq.

147)    Under Welfare & Institutions Code §15610.30, "financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following: ( 1) Takes, secretes, appropriates, obtains, or retains teal or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both. (2) Assists in taking, secreting, appropriating, obtaining. or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both. (3) Takes, secretes, appropriates, obtains, or retains, or assists in likely to be harmful to the elder or dependent adult. Defendants are liable for the financial elder abuse of George Chey because, not only should they have known they were assisting others' financial elder abuse, but their knowledge of the facts makes it clear that they must have known that when they were taking George Chey's funds out of his accounts by executing distributions from his retirement accounts and churning commissions for their own greed; Defendants were in possession of the following facts:

        a.  George Chey was an elderly man of 89-92 years of age at the time of the transactions;

        b.  In her almost 30 years of doing business with JPMorgan Chase Bank and J.P. Morgan Securities, George Chey was a very cautious and conservative investor;

c.  J.P. Morgan Securities drained George of all his retirement and life savings <u>and then refused to give him his remaining funds for 6 months while he was dying.</u>

148)    Defendants failed to create and/or follow their own policies and protocols to protect its elderly customers, including George, from financial elder abuse. Defendants hold itself out as protecting the elderly, and lures elderly customers into their institutions by posting information such as preventing elder financial abuse" on its website, with commitments such as:

> "Older adults are especially at risk for fraud and scams. Get the tools you need to plan for your future and help your loved ones do the same."

But then Defendants completely ignored the blatant signs which were clearly more than "hints" that financial industry and its own published protocols regarding training and monitoring for financial elder abuse. Defendants knew or should have known that failing to follow the standard of care in the industry and their own protocols to monitor for and protect against financial elder abuse, would subject elderly George to the foreseeable risk of undue influence and financial elder abuse.

149)    <u>Instead Defendants went after the children of a dying man and pegged them as scammers and abusers.</u>

150)    As a direct and proximate result of wrongful conduct of Defendants, and each of them, as alleged above, George and Plaintiffs Tim and Pastor Victor suffered economic damages, as well as mental distress, anguish, upset, humiliation, fear and anxiety as to her general damage in a sum to be established according to proof.

151)    Due to the conduct, acts and omissions of Defendants, and each of them as alleged above, in addition to all other remedies provided by law, Plaintiff is entitled to

recover reasonable attorney's fees and costs for financial elder abuse pursuant to Welfare & Institutions Code 12 §15657.5.

152)    By the conduct, acts and omissions of Defendants, and each of them, as alleged above, Defendants are guilty of recklessness, fraud, oppression, and/or malice. The specific facts set forth above show a disregard of the high probability that George would be injured. Defendants conduct constituted oppression, fraud, and malice in the commission of thefinancial abuse, and Plaintiff is entitled to recover damages for the sake of example and by way of punishing Defendants for financial abuse pursuant to Civil Code §3294.

153)    Wherefore, Plaintiff seeks relief as set forth below.

## THIRD CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY OF LOYALTY

[As Against All Defendants]

154)    Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as if fully set forth herein.

155)    Defendants owed fiduciary duties to George, Tim, and Pastor Vic, including those of undivided loyalty, to refrain from profiting at the expense of others, to disclose to Tim and Vic all pertinent information related to George's funds needed for his healthcare, and to discharge their duties in good faith for the benefit of Tim and Vic.

156)     Defendants starkly breached the above-mentioned fiduciary duties by:

    a.  Unlawfully refusing to give their clients their funds

    b.  Unlawfully doing trading that brought George's account to almost nothing;

    c.  Unlawfully lying about how to access their funds;

    d.  Fraudulently ignoring all California laws on banking and consumer regulation;

e.    Fraudulently ignoring all consumer regulations from the California Business and Professions Code and the Consumer Remedies Protection Act;

157)    As a direct and proximate result of Defendants' breaches of fiduciary duties as outlined above, among others, Plaintiffs Tim and Pastor Vic have been damaged in an amount which is presently unknown but which will be shown according to proof at trial, but no less $14 million in actual damages.

158)    Plaintiffs are informed and believes that in doing the acts alleged herein, Defendants acted with oppression, fraud and malice and in conscious disregard of Tim and Vic's rights, and both Tim and Vic are therefore entitled to an award of punitive damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
## SECURITIES FRAUD
## (Cal. Corp. Code § 25401)

159)    Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

160)    California Corporations Code§ 25401 (a) makes it unlawful in connection with the offer, sale, or purchase of a security to (a) employ a device, scheme or artifice to defraud, (b) an untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading, and (c) engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

161)    Defendants, by engaging in the conduct described above, offered securities for sale in the State of California, as alleged in this complaint, by means of both oral and

written communications, which included untrue statements of material facts and omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and have engaged in acts and practices that operate or would operate as a fraud and deceit upon another person.

162)     Plaintiffs are informed and believe, and thereon allege, that in acting in this manner, defendants employed a device and scheme to defraud an elderly man, and engaged in acts, practices and a course of business that operated as a fraud on George and his children. Before learning of Defendant's conduct, Plaintiffs were not aware of facts constituting a securities violation or had reason to suspect a factual basis for a securities violation.

163)     Plaintiffs are informed and believe, and thereon alJege, that Defendants knew about the falsity of their representations and/or omissions regarding the safety of elderly George's investment and the fees generated from the fund, or made those representations and omissions recklessly and without regard for the truth, and in fact actively concealed the fraudulent activity from elderly George who was shocked that there was little money in the JPMorgan accounts. Defendants intended that Plaintiffs rely on defendants' knowingly false representations and material omissions to induce George to do more business with these defendant advisors, to invest substantial sums in securities recommended by defendants and to pay substantial fees to defendants for their benefit.

164)     Plaintiffs did in fact reasonably rely upon the material misrepresentations that defendants made and material omissions to do business and continue to do business with defendants and entrust defendants with Plaintiff's financial security. Over a period of four years, Plaintiffs paid substantial sums to all Defendants and was induced to invest

substantial sums in securities, including but not limited to the J.P. Morgan Securities funds. Plaintiffs would not have used or continued to use the services of J.P. Morgan Securities if they had known the true facts.

165)     The misrepresentations and omissions were made in connection with the offer and sales of securities within the meaning of Corporations Code section 25017.

166)     The misstatements and omissions took place within the State of California within 10 the meaning of Corporations Code section 25008.

167)     Defendants' material misrepresentations and concealments of material facts, and defendants' scheme and device to defraud her caused an elderly man who lived to help others to suffer significant and substantial harm.

168)     As a direct and proximate cause of defendants' fraudulent conduct, Plaintiff's children have suffered staggering and significant financial damages in an amount to be determined at trial.

169)     By reason of the fraudulent and otherwise wrongful manner in which the Defendants, or any of them, obtained their alleged right, claim or interest in and to the property, Defendants, and each of them, have no legal or equitable right, claim or interest therein, but, instead, defendants, and each of them, are involuntary trustees holding said property and profits therefrom in constrnctive trust for Plaintiffs with the duty to convey the same to Plaintiffs forthwith.

170)     WHEREFORE, Plaintiffs pray for judgment as set forth below.

## FIFTH CAUSE OF ACTION
## FRAUD BY INVESTMENT ADVISERS
### (Cal. Corp. Code §25235)

171)    Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

172)    At all relevant times, all Defendants operated as investment advisers within the meaning of Corporations Code section 25009.

173)    Defendants have violated Corporations Code section 25235 by engaging in acts, practices, or a course of business of an investment adviser that are fraudulent, deceptive or manipulative by making material misrepresentations and omitting material facts necessary in to make the statements made, in light of the circumstances in which they were made, not misleading, including but not limited to, those set forth by this Complaint.

174)    These are horrific actions as it involves elder abuse of an elderly 92-year old man.

175)    Defendants' violations of Corporations Code section 25235 have caused damages Plaintiffs

176)    WHEREFORE, Plaintiffs pray for judgment as set forth below.

## **SIXTH CAUSE OF ACTION**
## **FRAUDULENT CONCEALMENT**

177)    Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

178)    Defendants' conduct giving rise to this dispute, as further detailed below, is more of the same self-serving, dishonest, wrongdoing summarized by Chairwoman above.

179)    As of the present day, J.P. Morgan Securities has still not released any of the documents showing where the missing funds disappeared to or what happened to the funds. This is shameful behavior from a major publically-traded company.

180)    <u>Defendant David Kim has never been in contact with his customer George and his children after refusing to allow George to access his funds from the local branch.</u>

181)    Plaintiffs believe this is wide-reaching conspiracy that reaches every corner of the C-Suites at Defendant J.P. Morgan Securities and JP Morgan Chase Bannk.

182)    All the Defendants, and each of them individually and jointly, failed to do so, and willfully concealed their hideous and sneaky actions.

183)    The elements of Fraudulent concealment include:

"The elements of an action for fraudulent concealment in California are:

(1) the defendant must have concealed or suppressed a material fact,

(2) the defendant must have been under a duty to disclose the fact to

the plaintiff, (3) the defendant must have intentionally concealed or

suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must

have been unaware of the fact and would not have acted as he did if he had known

of the concealed or suppressed fact, and (5) as a result of the concealment or

suppression of the fact, the plaintiff must have sustained damage." (Boschma v.

Home Loan Center, Inc. (2011) 198 Cal.App.4th 230, 248 [129 Cal.Rptr.3d 874].)

184)    All of the elements for fradulent concealment have been starkly met.

185)    <u>**Fraudulent concealment**</u> included:

a.   Unlawfully refusing to give their clients their funds;

b.   Unlawfully draining George's account to almost nothing;

c.   Unlawfully lying about how to access their funds;

d.   Fraudulently ignoring all California laws on investment and banking;

e.   Fraudulently ignoring all banking and consumer and investment regulations;

f.   This was all done in a sneaky, underhanded manner to gain a commission all at the expense of Plaintiffs

186)    Plaintiffs relied on the assumed good faith of Defendants and as direct and proximate result of aforesaid reliance. As a *direct* and legal result of the aforesaid illegal and fraudulent concealment by the Defendants, Plaintiffs suffered horrendous damages.. In total, the loss was over $14 million (to possibly $15 million) including the passing of their dear father.

187)     As a direct and legal result of Defendants' tortious acts committed in furtherance of the above-referenced wrongful acts, Plaintiffs Tim and Pastor Vic have suffered significant and stark damages, and is entitled to the relief sought herein, to be determined at trial.

188)    Defendants may have also violated the Unruh Civil Rights Act and all of them will be deposed in January / February 2024.

189)    As a further proximate result of the wrongful acts by Defendants. and each of them, Plaintiffs will in the future suffer additional damages, the exact nature and extent of which are currently unknown to Plaintiffs. Plaintiffs will seek leave of Court to amend this Complaint to set forth the full amount of damage when ascertained.

190)    Upon information and belief, Defendants made these intentional misrepresentations and acted with malice and oppression and with a conscious disregard of Plaintiff Timothy and Victor's rights, thereby making Defendants liable for punitive damages under California Civil Code §§3294 and 3295.

## SEVENTH CAUSE OF ACTION

## FRAUDULENT MISREPRESENTATION
## VIOLATION OF CALIFORNIA CIVIL CODE §1709
[As Against All Defendants]

191)    Plaintiffs hereby reallege and incorporates by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

192)    To prevail on a cause of action of fraudulent misrepresentation, Plaintiff must show that there exists:  (1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intention of misleading another party into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. Plaintiff is very confident that any reasonable jury will find all of the causes of action present in the ongoing facts and will find in favor of the Plaintiff.

193)    All of the elements from the above facts will prove Defendants intentionally misrepresented the JP MORGAN SECURITIES and JPMORGAN CHASE BANK to a dying customer causing enormous grief and damages to Plaintiff.

194)    Plaintiffs performed all obligations required by to be performed under the written, signed contract except for those obligations waived, excused, or prevented by Defendant.

195)    All acts or omissions alleged to have been engaged in intent to injure plaintiff or with a willful and conscious disregard for the rights and safety of plaintiff, and were malicious and oppressive, entitling plaintiff to recover punitive damages from defendants.

196)    By the acts as alleged herein Defendants and each of them; have engaged in conduct constituting constitute unfair and fraudulent practices within the meaning of. Their actions, policies and practices describe herein are fraudulent, as well as violative of California Civil Code §1709.

197)     California Civil Code states: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

198)     Defendant JPMorgan Chase Bank is one of the largest banks in the United States and they therefor control a large portion of investment advising and securitization business. They have a dominant presence in the market area where elderly people can be preyed upon.

199)     After elderly George passed away in February 14, 2022, Plaintiff Tim and Victor began doing due dillegence on their father's papers and discovered their father's built up life savings of over $14 million and lost most of it.

200)     On May 13, 2022, Plaintiff Tim emailed JP Morgan's counsel requesting all of the statements as they believed their father was scammed (see EXHIBIT L).

201)     Defendant's counsel did not answer the final email.

202)     On December 22, 2022, Plaintiff Tim sent a subpoena to J.P. Morgan Securities and J.P. Morgan Securities refused to send any documents to Plaintiff Tim.

203)     As to date, J.P. Morgan Securities has not responded with any of the required documents leaving Plaintiffs completely in the dark. This is wrongful behavior and Plaintiffs hope the CEO of J.P. Morgan Securities will step in finally and get to the bottom of this situation.

204)     All acts or omissions alleged to have been engaged in intent to injure plaintiff or with a willful and conscious disregard for the rights of plaintiff, and were malicious and oppressive, entitling plaintiff to recover punitive damages from defendants.

## **EIGHTH CAUSE OF ACTION**

# VIOLATION OF RULE 204A-1 UNDER THE INVESTMENT ADVISORS ACT.

205)     Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

206)     Rule 204A-1 under the Investment Advisers Act of 1940 ("Advisers Act") requires all investment advisers registered with the Securities and Exchange Commission ("SEC") to adopt codes of ethics that set forth standards of conduct and require compliance with federal securities laws.

207)     Should an agent be accused of a breach of good faith, it is the agent's burden to prove "that he acted with the utmost good faith toward his principal and that he make a full disclosure prior to the transaction of all the facts relating to the transactions under attack." *Bate v. Marsteller ((1959) 175 Cal. App. 2d 573)*, citing *Schwarting v. Artel, 40 Cal.App.2d 433, 441*.

208)     The *Bate* court further ruled that a broker who breaches his duty of good faith is not only precluded from recovering compensation for his services, but he may also be held liable for the damages caused by his fraud. (9 Cal.Jur.2d 200-201).

209)     After elderly George passed away in February 14, 2022, Plaintiff Tim and Victor began doing due dillegence on their father's papers and discovered their father's built up life savings of over $14 million dwindled away to almost zero.

210)     Or or about June 2021 to August 2021, elderly George began to fall to the ground and went to the hospital where they uncovered 4th stage stomach and pancreatic cancer.

211)     He needed full-time caregivers if he were to stay in his house. This medical care cost over $16,000 a month between two of the caregivers.

212)    Immediately George's two sons Tim and Pastor Victor began doing deep dives into George's accounts and saw funds were available at Defendants J.P. Morgan Securities and JPMorgan Chase Bank.

213)    Tim is a faith-based filmmaker and was not wealthy enough to handle this monthly expense. He is also a pro-bono attorney helping ministries and did not make much as a normal lawyer would.

214)    Neither was Pastor Victor who is a full-time pastor at a Baptist church.

215)    The father of the Plaintiffs was a distinguished man who helped the city of LA by creating a bank to serve and assist all members of the community, and raising millions of dollars for the Good Samaritan Hospital as the advisor to the president. He was also a devout man of faith who did all he could to serve the Southern California community at large. Their father was the chairman and founder of a NASDAQ-traded company

**Elderly George Could Not Access Any Funds Out of Either JPMorgan Chase Bank or J.P. Morgan Securities as He Was Dying of 4th Stage Cancer**

216)    On or about September 27, 2021, Tim and his brother Pastor Victor took their elderly father George into the local Chase Bank to withdraw George's funds for George's medical care.

217)    They were immediately met by Defendant David Kim who knew and greeted elderly George.

218)    Defendant Kim then asked to see the driver's licenses of Tim and Pastor Victor who gave Mr. Kim their IDs. He asked George what he was doing at the bank and George said he wanted to withdraw funds. Immediately, Mr. Kim's face dropped and he said to come with him.

219)    Defendant Kim then had the Tim, Victor, and George sit in his cubicle.

220)    Defendant Kim then asked what George wanted to do again.

221)    Baffled, George explained he needed funds for his full-time caregivers. Tim also piped in that George fell and needed care (not that anyone has to explain anything to a bank manager).

222)    Defendant Kim then strangely said he needed to get someone. He then came back with the branch manager Defendant Lacie Chey (no relation to Plaintiffs) who approached.

223)    George again told Defendant Lacie that he needed cash out of his checking account to help with his health as he had cancer.

224)    Defendant Lacie looked at Defendant Kim and shook her head. She then told elderly George she couldn't help.

225)    Tim then stood up and asked why.

226)    Defendant Lacie and Defendant Kim were both silent and then said if there's anything more they could do for the Chey family.

227)    "Are you saying our father is not allowed to get his funds out," Pastor Vic asked in disbelief.

228)    "That's correct," said Defendant Kim.

229)    Elderly George was heart-broken as they left the bank.

230)    **Plaintiffs were left stunned by the actions of Defendant Chase Bank.**

231)    Immediately upon getting home, Tim emailed Chase Bank to let them know what was going on.

232) Instead of Defendant Chase Bank doing the right thing and getting elderly George his funds, the bank instead hired Greenberg Taurig a top law firm in Century City, California to respond.

233) Instead of Greenberg Taurig responding to try to resolve the issue, the Greenberg attorney tried to escalate the issue.

234) In fact, Greenberg Taurig may have called the Welfare department as soon after a strange visitor came telling elderly George they were from the city's welfare department and someone had called in to have them come.

235) If this is true, Plaintiffs will file a $100 million lawsuit against Greenberg Taurig and their attorneys.

236) In the meantime, Tim and Victor had to find a way to pay for the full-time caregivers who were going to give care to elderly George by helping him to the bathroom.

237) As elderly George still had his JPMorgan Private Client accounts, George called his advisor but they did not return his calls.

238) Next Tim tried. No one responded. The advisor's name was on the statement.

239) Tim, an attorney, then emailed Dylan Fallik, an attorney at JPMorgan Chase (See EXHIBIT A-1):

*"Law Firm" <lawfirmofconsumerjustice@activist.com>*
*"Fallik, Dylan" <dylan.fallik@jpmchase.com>*
*Sep 27, 2021 5:19:02 PM*
***Hi Mr./Ms. Fallik:***

***We have a very very serious problem on our hands.***

***I have the Power of Attorney for my father George S. Chey***

*The branch of Chase Private Client Group and the main banking branch have committed stark elder abuse – a complete violation of Caifornia law - by refusing to help us in any way - in fact, two of them just stood there refusing to help my elderly father to check on his acccount.*

*Then TODAY, we inquired with Chase Private Client Group - same branch office 1600 N. Vermont Ave, Hollywood CA 90027 (323 662 4126) and again same response - zero help.*

*The balance on the Chase/JP Morgan account is $503,000. This is NOT a small amount and my father desperately needs these funds to help with his costly health care. The Chase Private account is: 963-37178 You are welcome to call me anytime: 310 695 7119 - but this must be resolved by next Monday, October 4, 2021 or I will be forced to file an Ex Parte Application with the LA Superior Court which would be the most severely ridiculous action I've ever filed in my 27 years of practicing litigation law.*

*Very truly yours,*
*Timothy A. Chey, Esq*
*Attorney at Law*
*Law Offices of Consumer Justice*
*Arco Tower*
*1055 West 7th Street*
*33rd Floor (Penthouse)*
*Downtown LA, CA 90017*

240)    Chase Bank then hired Greenberg Taurig and Counsel Karin Bolmholdt ignored Plaintiff Tim's demand to open his father's account so his dying dad could access the funds for his caregivers.

241)    Ms. Bolmholt – instead of defusing the situation and finding a solution to get a dying man his funds – kept emailing Plaintiff to stop communicating with the Chase office – it was a playbook out of a typical non-caring attorney defending her Fortune 500 client. It was beyond litigation privilege but a malicous act against a dying elderly man (see EXHIBIT F).

242)    Plaintiff Tim to help his dying father had no choice but to email an Ex Parte notice to Chase Bank and Attorney Bolmholt. He should never had had to do this.

243)      In the meantime, someone at either Chase Bank or Greenberg Taurig – the most vicious and despicable means – actually called the LA Welfare Department and had a representative actually come to the elderly George residence because she received a call of possible elder abuse.

244)      It was an astonishing and vile act. Defendants were committing elder abuse and actually tried to deflect it by accusing Pastor Victor and Tim of elder abuse.

245)      More discovery will determine who called the LA Welfare office and whoever did will be added to this lawsuit including Greenberg Taurig if this firm called and falsely reported elder abuse.

246)      On October 14, 2022 – more than 3 weeks since JPMorgan Chase first learned of this dire situation -  Ms. Bolmholt wrote that Chase Bank wished to terminate its banking relationship with elderly George for no reason and that Plaintiff Tim was not allowed to enter any Chase Bank (see Exhibit G).

247)      It was the most outrageous and horrific day in the life of both Plaintiffs. No one deserves this treatment especially from a large publically-traded bank.

248)      On February 14, 2022, elderly George passed away a heartbroken man.

249)      These horrific actions by banks must end.

250)      Plaintiffs understand the need to protect against scammers but banks cannot and do not have any powers to tell family members of a dying man they could be possible scammers.

**On or about July 2022, Plaintiffs Realized They were Being Defrauded By Chase Bank and JPMorgan Private Client**

251)    On or about July 2022, Plaintiffs began to realize they were being defrauded in a massive fraud by Chase Bank and JP Morgan Private Client.

252)    They discovered JP Morgan Chase documents that showed massive amounts in the millions down to zero.

**Elderly George Died While J.P. Morgan Securities Still Withheld His Funds**

253)    Elderly George was heartbroken and would die two months later.

254)    Plaintiffs Tim and Pastor Victor believe their father would have lived longer but for the incessant abuse of which Defendant J.P. Morgan Securities helped contribute to this financial and physical elder abuse by refusing to give elderly George his money.

255)    During the next several weeks, Plaintiff Tim had to deal with the most outrageous stall tactics by Defendant J.P. Morgan Securities to simply get his father's funds.

256)    Tim spend countless hours during the four months – maybe over 200 hours – to simply close his father's account. His father again would die two months later – a heartbroken man due to J.P. Morgan Securities's greed and unending torment to access his funds.

257)    As a direct and proximate result of Defendants' breaches of fiduciary duties as outlined above, among others, Plaintiffs Tim and Pastor Vic have been damaged in an amount which is presently unknown but which will be shown according to proof at trial, but no less than $14 million (to possibly $15 million) in actual damages.

# NINTH CAUSE OF ACTION
# VIOLATION OF BUSINESS AND PROFESSIONS CODE §10000
## (UNLAWFUL, UNFAIR AND DECEPTIVE BUSINESS PRACTICES)

258)    Plaintiff hereby realleges and incorporates by reference, each and every allegation contained in the Com plaint, as though fully set forth herein.

259)    Both the **Banking Laws** and the **Department of Investment Regulation** act to protect consumers of *services rendered* by investment advisor licensees. Thus, the public is assured banking licensees will be honest, truthful and of good reputation, in a word, *ethical*.

260)    Or or about June 2021 to August 2021, elderly George began to fall to the ground and went to the hospital where they uncovered 4th stage stomach and pancreatic cancer.

261)    He needed full-time caregivers if he were to stay in his house. This medical care cost over $16,000 a month between two of the caregivers.

262)    Immediately George's two sons Tim and Pastor Victor began doing deep dives into George's accounts and saw funds were available at Defendants J.P. Morgan Securities and JPMorgan Chase Bank.

263)    Tim is a faith-based filmmaker and was not wealthy enough to handle this monthly expense. He is also a pro-bono attorney helping ministries and did not make much as a normal lawyer would.

264)    Neither was Pastor Victor who is a full-time pastor at a Baptist church.

265)    The father of the Plaintiffs was a distinguished man who helped the city of LA by creating a bank to serve and assist all members of the community, and raising millions of dollars for the Good Samaritan Hospital as the advisor to the president. He was also a devout man of faith who did all he could to serve the Southern California community at large. Their father was the chairman and founder of a NASDAQ-traded company

**Elderly George Could Not Access Any Funds Out of Either JPMorgan Chase Bank or J.P. Morgan Securities as He Was Dying of 4th Stage Cancer**

266)    On or about September 27, 2021, Tim and his brother Pastor Victor took their elderly father George into the local Chase Bank to withdraw George's funds for George's medical care.

267)    They were immediately met by Defendant David Kim who knew and greeted elderly George.

268)    Defendant Kim then asked to see the driver's licenses of Tim and Pastor Victor who gave Mr. Kim their IDs. He asked George what he was doing at the bank and George said he wanted to withdraw funds. Immediately, Mr. Kim's face dropped and he said to come with him.

269)    Defendant Kim then had the Tim, Victor, and George sit in his cubicle.

270)    Defendant Kim then asked what George wanted to do again.

271)    Baffled, George explained he needed funds for his full-time caregivers. Tim also piped in that George fell and needed care (not that anyone has to explain anything to a bank manager).

272)    Defendant Kim then strangely said he needed to get someone. He then came back with the branch manager Defendant Lacie Chey (no relation to Plaintiffs) who approached.

273)    George again told Defendant Lacie that he needed cash out of his checking account to help with his health as he had cancer.

274)    Defendant Lacie looked at Defendant Kim and shook her head. She then told elderly George she couldn't help.

275) Tim then stood up and asked why.

276) Defendant Lacie and Defendant Kim were both silent and then said if there's anything more they could do for the Chey family.

277) "Are you saying our father is not allowed to get his funds out," Pastor Vic asked in disbelief.

278) "That's correct," said Defendant Kim.

279) Elderly George was heart-broken as they left the bank.

280) **Plaintiffs were left stunned by the actions of Defendant Chase Bank.**

281) Immediately upon getting home, Tim emailed Chase Bank to let them know what was going on.

282) Instead of Defendant Chase Bank doing the right thing and getting elderly George his funds, the bank instead hired Greenberg Taurig a top law firm in Century City, California to respond.

283) Instead of Greenberg Taurig responding to try to resolve the issue, the Greenberg attorney tried to escalate the issue.

284) In fact, Greenberg Taurig may have called the Welfare department as soon after a strange visitor came telling elderly George they were from the city's welfare department and someone had called in to have them come.

285) If this is true, Plaintiffs will file a $100 million lawsuit against Greenberg Taurig and their attorneys.

286) In the meantime, Tim and Victor had to find a way to pay for the full-time caregivers who were going to give care to elderly George by helping him to the bathroom.

287)    As elderly George still had his JPMorgan Private Client accounts, George called his advisor but they did not return his calls.

288)    Next Tim tried. No one responded. The advisor's name was on the statement.

289)    Tim, an attorney, then emailed Dylan Fallik, an attorney at JPMorgan Chase (See EXHIBIT A-1):

*"Law Firm" <lawfirmofconsumerjustice@activist.com>*
*"Fallik, Dylan" <dylan.fallik@jpmchase.com>*
*Sep 27, 2021 5:19:02 PM*
***Hi Mr./Ms. Fallik:***

***We have a very very serious problem on our hands.***

***I have the Power of Attorney for my father George S. Chey***

***The branch of Chase Private Client Group and the main banking branch have committed stark elder abuse – a complete violation of Caifornia law - by refusing to help us in any way - in fact, two of them just stood there refusing to help my elderly father to check on his acccount.***

***Then TODAY, we inquired with Chase Private Client Group - same branch office 1600 N. Vermont Ave, Hollywood CA 90027 (323 662 4126) and again same response - zero help.***

*The balance on the Chase/JP Morgan account is $503,000. This is NOT a small amount and my father desperately needs these funds to help with his costly health care. The Chase Private account is: 963-37178 You are welcome to call me anytime: 310 695 7119 - but this must be resolved by next Monday, October 4, 2021 or I will be forced to file an Ex Parte Application with the LA Superior Court which would be the most severely ridiculous action I've ever filed in my 27 years of practicing litigation law.*

*Very truly yours,*
*Timothy A. Chey, Esq*
*Attorney at Law*
*Law Offices of Consumer Justice*
*Arco Tower*
*1055 West 7th Street*
*33rd Floor (Penthouse)*
*Downtown LA, CA 90017*

290)      Chase Bank then hired Greenberg Taurig and Counsel Karin Bolmholdt ignored Plaintiff Tim's demand to open his father's account so his dying dad could access the funds for his caregivers.

291)      Ms. Bolmholt – instead of defusing the situation and finding a solution to get a dying man his funds – kept emailing Plaintiff to stop communicating with the Chase office – it was a playbook out of a typical non-caring attorney defending her Fortune 500 client. It was beyond litigation privilege but a malicous act against a dying elderly man (see EXHIBIT F).

292)      Plaintiff Tim to help his dying father had no choice but to email an Ex Parte notice to Chase Bank and Attorney Bolmholt. He should never had had to do this.

293)      In the meantime, someone at either Chase Bank or Greenberg Taurig – the most vicious and despicable means – actually called the LA Welfare Department and had a representative actually come to the elderly George residence because she received a call of possible elder abuse.

294)      It was an astonishing and vile act. Defendants were committing elder abuse and actually tried to deflect it by accusing Pastor Victor and Tim of elder abuse.

295)      More discovery will determine who called the LA Welfare office and whoever did will be added to this lawsuit including Greenberg Taurig if this firm called and falsely reported elder abuse.

296)      On October 14, 2022 – more than 3 weeks since JPMorgan Chase first learned of this dire situation -  Ms. Bolmholt wrote that Chase Bank wished to terminate its banking relationship with elderly George for no reason and that Plaintiff Tim was not allowed to enter any Chase Bank (see Exhibit G).

297)    It was the most outrageous and horrific day in the life of both Plaintiffs. No one deserves this treatment especially from a large publically-traded bank.

298)    On February 14, 2022, elderly George passed away a heartbroken man.

299)    These horrific actions by banks must end.

300)    Plaintiffs understand the need to protect against scammers but banks cannot and do not have any powers to tell family members of a dying man they could be possible scammers.

**On or about July 2022, Plaintiffs Realized They were Being Defrauded By Chase Bank and JPMorgan Private Client**

301)    On or about July 2022, Plaintiffs began to realize they were being defrauded in a massive fraud by Chase Bank and JP Morgan Private Client.

302)    They discovered JP Morgan Chase documents that showed massive amounts in the millions down to zero.

**Elderly George Died While J.P. Morgan Securities Still Withheld His Funds**

303)    Elderly George was heartbroken and would die two months later.

304)    Plaintiffs Tim and Pastor Victor believe their father would have lived longer but for the incessant abuse of which Defendant J.P. Morgan Securities helped contribute to this financial and physical elder abuse by refusing to give elderly George his money.

305)    During the next several weeks, Plaintiff Tim had to deal with the most outrageous stall tactics by Defendant J.P. Morgan Securities to simply get his father's funds.

306)    Tim spend countless hours during the four months – maybe over 200 hours – to simply close his father's account. His father again would die two months later – a

heartbroken man due to J.P. Morgan Securities's greed and unending torment to access his funds.

307)    Defendants and any other perpetrators should also have their licenses revoked by as specified under the Business and Professions Code.

308)    All of these Defendants will be deposed and put on the witness stand during the trial.

309)    Plaintiff Tim and his brother endured one of the most excruciating and crushing events of their entire life: Being victimized in a very large and important financial transactions due to the complete, and total fraud perpetrated by the Defendants, who chose to ignore the best interests of their client in favor of enriching themselves.

310)    All acts or omissions alleged to have been engaged in intent to injure plaintiff or with a willful and conscious disregard for the rights and safety of plaintiff, and were malicious and oppressive, entitling plaintiff to recover punitive damages from defendants.

## TENTH CAUSE OF ACTION
## BREACH OF WRITTEN CONTRACT

[As Against All Defendants]

311)    Plaintiffs hereby realleges and incorporates by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

312)    There are four standard elements required to establish a claim for breach of contract in California: (i) the existence of a valid contract, (ii) the plaintiff's performance or excuse for nonperformance, (iii) the defendant's breach of contract, and (iv) resulting damages.

313)    All of these elements have been starkly met and more.

314)    Plaintiffs Timothy and Victor and their father George performed all conditions, covenants, and promises required on their part to be performed in accordance with their

agreement with all Defendants, and Does 1-20 with reference to all of the accounts, except those terms for which performance was excused and/or waived by the conduct of said Defendants and their agents.

315)    <u>Defendants breached their written agreement with Plaintiffs by misrepresenting, sabotaging, and thwarting an elderly dying man. It's that simple and straight-forward.</u>

316)    As a result of the breach of a signed contract Plaintiffs have been damaged in an amount according to proof at trial, but in any event in excess of the jurisdictional amount of this Court and in at least the sum of over $14 million.

317)    Plaintiffs intend to bring justice to this case if it takes them 20 years. They will not stop until all the parties are brought to justice before a jury of peers.

318)    All acts or omissions alleged to have been engaged in intent to injure plaintiffs or with a willful and conscious disregard for the rights and safety of plaintiffs, and were malicious and oppressive, entitling plaintiff to recover punitive damages from defendants.

## <u>ELEVENTH CAUSE OF ACTION</u>
## <u>BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING</u>

[As Against All Defendants]

319)    Plaintiff hereby realleges and incorporates by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

320)    Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc*. (1992) 2 Cal.4th 342, 371.)  However, "[t]he implied covenant 'is designed to effectuate the intentions and reasonable expectations of parties reflected by mutual promises within the contract.'

321)    All of the following elements must exist to state a claim for breach of the duty of good faith and fair dealing in a contract action: (1) A contractual relationship between the parties; (2) Plaintiffs's performance, or excuse from performance, of the obligations under the contract; (3) An allegation that the defendant unfairly prevented Plaintiffs from receiving the benefits that Plaintiffs was entitled to receive under the contract; and (4) An allegation that defendant's conduct resulted in harm to the Plaintiffs.

322)    <u>All of the elements in this cause of action have been starkly met</u>.

323)    Defendants improperly frustrated Plaintiff's ability to receive their father's funds from his J.P. Morgan Securities account that he had amassed to which he was entitled to by falsely and in bad faith ignoring his wishes and then a extremely horrific system of 4 months of getting any access to his funds.. By depriving Plaintiffs of the benefits of the agreement which Plaintiffs and their father had each earned by faithfully performing their duties under the contract and to which they are entitled, Defendants starkly breached the covenant of good faith and fair dealing.

324)    **Plaintiffs were left stunned by the actions of Defendant J.P. Morgan Securities.**

325)    Or or about June 2021 to August 2021, elderly George began to fall to the ground and went to the hospital where they uncovered 4th stage stomach and pancreatic cancer.

326)    He needed full-time caregivers if he were to stay in his house. This medical care cost over $16,000 a month between two of the caregivers.

327)    Immediately George's two sons Tim and Pastor Victor began doing deep dives into George's accounts and saw funds were available at Defendants J.P. Morgan Securities and JPMorgan Chase Bank.

328)    Tim is a faith-based filmmaker and was not wealthy enough to handle this monthly expense. He is also a pro-bono attorney helping ministries and did not make much as a normal lawyer would.

329)    Neither was Pastor Victor who is a full-time pastor at a Baptist church.

330)    The father of the Plaintiffs was a distinguished man who helped the city of LA by creating a bank to serve and assist all members of the community, and raising millions of dollars for the Good Samaritan Hospital as the advisor to the president. He was also a devout man of faith who did all he could to serve the Southern California community at large. Their father was the chairman and founder of a NASDAQ-traded company

**Elderly George Could Not Access Any Funds Out of Either JPMorgan Chase Bank or J.P. Morgan Securities as He Was Dying of 4th Stage Cancer**

331)    On or about September 27, 2021, Tim and his brother Pastor Victor took their elderly father George into the local Chase Bank to withdraw George's funds for George's medical care.

332)    They were immediately met by Defendant David Kim who knew and greeted elderly George.

333)    Defendant Kim then asked to see the driver's licenses of Tim and Pastor Victor who gave Mr. Kim their IDs. He asked George what he was doing at the bank and George said he wanted to withdraw funds. Immediately, Mr. Kim's face dropped and he said to come with him.

334)    Defendant Kim then had the Tim, Victor, and George sit in his cubicle.

335)    Defendant Kim then asked what George wanted to do again.

336)    Baffled, George explained he needed funds for his full-time caregivers. Tim also piped in that George fell and needed care (not that anyone has to explain anything to a bank manager).

337)    Defendant Kim then strangely said he needed to get someone. He then came back with the branch manager Defendant Lacie Chey (no relation to Plaintiffs) who approached.

338)    George again told Defendant Lacie that he needed cash out of his checking account to help with his health as he had cancer.

339)    Defendant Lacie looked at Defendant Kim and shook her head. She then told elderly George she couldn't help.

340)    Tim then stood up and asked why.

341)    Defendant Lacie and Defendant Kim were both silent and then said if there's anything more they could do for the Chey family.

342)    "Are you saying our father is not allowed to get his funds out," Pastor Vic asked in disbelief.

343)    "That's correct," said Defendant Kim.

344)    Elderly George was heart-broken as they left the bank.

345)    **Plaintiffs were left stunned by the actions of Defendant Chase Bank.**

346)    Immediately upon getting home, Tim emailed Chase Bank to let them know what was going on.

347)    Instead of Defendant Chase Bank doing the right thing and getting elderly George his funds, the bank instead hired Greenberg Taurig a top law firm in Century City, California to respond.

348)      Instead of Greenberg Taurig responding to try to resolve the issue, the Greenberg attorney tried to escalate the issue.

349)      In fact, Greenberg Taurig may have called the Welfare department as soon after a strange visitor came telling elderly George they were from the city's welfare department and someone had called in to have them come.

350)      If this is true, Plaintiffs will file a $100 million lawsuit against Greenberg Taurig and their attorneys.

351)      In the meantime, Tim and Victor had to find a way to pay for the full-time caregivers who were going to give care to elderly George by helping him to the bathroom.

352)      As elderly George still had his JPMorgan Private Client accounts, George called his advisor but they did not return his calls.

353)      Next Tim tried. No one responded. The advisor's name was on the statement.

354)      Tim, an attorney, then emailed Dylan Fallik, an attorney at JPMorgan Chase (See EXHIBIT A-1):

*"Law Firm" <lawfirmofconsumerjustice@activist.com>*
*"Fallik, Dylan" <dylan.fallik@jpmchase.com>*
*Sep 27, 2021 5:19:02 PM*
**Hi Mr./Ms. Fallik:**

**We have a very very serious problem on our hands.**

**I have the Power of Attorney for my father George S. Chey**

**The branch of Chase Private Client Group and the main banking branch have committed stark elder abuse – a complete violation of Caifornia law - by refusing to help us in any way - in fact, two of them just stood there refusing to help my elderly father to check on his acccount.**

Complaint - 57

*Then TODAY, we inquired with Chase Private Client Group - same branch office 1600 N. Vermont Ave, Hollywood CA 90027 (323 662 4126) and again same response - zero help.*

*The balance on the Chase/JP Morgan account is $503,000. This is NOT a small amount and my father desperately needs these funds to help with his costly health care. The Chase Private account is: 963-37178 You are welcome to call me anytime: 310 695 7119 - but this must be resolved by next Monday, October 4, 2021 or I will be forced to file an Ex Parte Application with the LA Superior Court which would be the most severely ridiculous action I've ever filed in my 27 years of practicing litigation law.*

*Very truly yours,*
*Timothy A. Chey, Esq*
*Attorney at Law*
*Law Offices of Consumer Justice*
*Arco Tower*
*1055 West 7th Street*
*33rd Floor (Penthouse)*
*Downtown LA, CA 90017*

355)    Chase Bank then hired Greenberg Taurig and Counsel Karin Bolmholdt ignored Plaintiff Tim's demand to open his father's account so his dying dad could access the funds for his caregivers.

356)    Ms. Bolmholt – instead of defusing the situation and finding a solution to get a dying man his funds – kept emailing Plaintiff to stop communicating with the Chase office – it was a playbook out of a typical non-caring attorney defending her Fortune 500 client. It was beyond litigation privilege but a malicous act against a dying elderly man (see EXHIBIT F).

357)    Plaintiff Tim to help his dying father had no choice but to email an Ex Parte notice to Chase Bank and Attorney Bolmholt. He should never had had to do this.

358)    In the meantime, someone at either Chase Bank or Greenberg Taurig – the most vicious and despicable means – actually called the LA Welfare Department and had a

representative actually come to the elderly George residence because she received a call of possible elder abuse.

359)    It was an astonishing and vile act. Defendants were committing elder abuse and actually tried to deflect it by accusing Pastor Victor and Tim of elder abuse.

360)    More discovery will determine who called the LA Welfare office and whoever did will be added to this lawsuit including Greenberg Taurig if this firm called and falsely reported elder abuse.

361)    On October 14, 2022 – more than 3 weeks since JPMorgan Chase first learned of this dire situation -  Ms. Bolmholt wrote that Chase Bank wished to terminate its banking relationship with elderly George for no reason and that Plaintiff Tim was not allowed to enter any Chase Bank (see Exhibit G).

362)    It was the most outrageous and horrific day in the life of both Plaintiffs. No one deserves this treatment especially from a large publically-traded bank.

363)    On February 14, 2022, elderly George passed away a heartbroken man.

364)    These horrific actions by banks must end.

365)    Plaintiffs understand the need to protect against scammers but banks cannot and do not have any powers to tell family members of a dying man they could be possible scammers.

**On or about July 2022, Plaintiffs Realized They were Being Defrauded By Chase Bank and JPMorgan Private Client**

366)    On or about July 2022, Plaintiffs began to realize they were being defrauded in a massive fraud by Chase Bank and JP Morgan Private Client.

367)    They discovered JP Morgan Chase documents that showed massive amounts in the millions down to zero.

**Elderly George Died While J.P. Morgan Securities Still Withheld His Funds**

368)    Elderly George was heartbroken and would die two months later.

369)    Plaintiffs Tim and Pastor Victor believe their father would have lived longer but for the incessant abuse of which Defendant J.P. Morgan Securities helped contribute to this financial and physical elder abuse by refusing to give elderly George his money.

370)    During the next several weeks, Plaintiff Tim had to deal with the most outrageous stall tactics by Defendant J.P. Morgan Securities to simply get his father's funds.

371)    Tim spend countless hours during the four months – maybe over 200 hours – to simply close his father's account. His father again would die two months later – a heartbroken man due to J.P. Morgan Securities's greed and unending torment to access his funds.

372)    On or abou May 2022, Plaintiff Tim sent a subpoena to J.P. Morgan Securities and J.P. Morgan Securities refused to send the documents to Plaintiff Tim.

373)    As to date, J.P. Morgan Securities has not responded with any of the demanded documents.

374)    Defendants never apologized for their misconduct.

375)    Defendants also starkly breached the above-mentioned fiduciary duties by:

    a.  Unlawfully refusing to give their clients their funds;
    b.  Unlawfully draining George's account to almost nothing;
    c.  Unlawfully lying about how to access their funds;
    d.  Fraudulently ignoring all California laws on investment and banking;
    e.  Fraudulently ignoring all banking and consumer and investment regulations;

f.  This was all done in a sneaky, underhanded manner to gain a commission all at the expense of Plaintiffs

376)  All acts or omissions alleged to have been engaged in intent to injure plaintiff or with a willful and conscious disregard for the rights and safety of plaintiffs, and were malicious and oppressive, entitling plaintiff to recover punitive damages from defendants.

## TWELFTH CAUSE OF ACTION
## VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT (Civil Code §1750 et seq.)

[As Against All Defendants]

377)  Plaintiff hereby realleges and incorporates by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

378)  The California Consumers Legal Remedies Act, or CLRA, is a consumer statute that's codified in Cal. Civil Code §1750. The law allows plaintiffs to bring private civil actions against companies or individuals that use "unfair methods of competition and unfair or deceptive acts or practices in a transaction."

379)  It's clear that Defendant breached this act with wanton, deliberate, calculating greed, fraud, and possible discrimination at its lowest.

380)  Or or about June 2021 to August 2021, elderly George began to fall to the ground and went to the hospital where they uncovered 4th stage stomach and pancreatic cancer.

381)  He needed full-time caregivers if he were to stay in his house. This medical care cost over $16,000 a month between two of the caregivers.

382)    Immediately George's two sons Tim and Pastor Victor began doing deep dives into George's accounts and saw funds were available at Defendants J.P. Morgan Securities and JPMorgan Chase Bank.

383)    Tim is a faith-based filmmaker and was not wealthy enough to handle this monthly expense. He is also a pro-bono attorney helping ministries and did not make much as a normal lawyer would.

384)    Neither was Pastor Victor who is a full-time pastor at a Baptist church.

385)    The father of the Plaintiffs was a distinguished man who helped the city of LA by creating a bank to serve and assist all members of the community, and raising millions of dollars for the Good Samaritan Hospital as the advisor to the president. He was also a devout man of faith who did all he could to serve the Southern California community at large. Their father was the chairman and founder of a NASDAQ-traded company

**Elderly George Could Not Access Any Funds Out of Either JPMorgan Chase Bank or J.P. Morgan Securities as He Was Dying of 4th Stage Cancer**

386)    On or about September 27, 2021, Tim and his brother Pastor Victor took their elderly father George into the local Chase Bank to withdraw George's funds for George's medical care.

387)    They were immediately met by Defendant David Kim who knew and greeted elderly George.

388)    Defendant Kim then asked to see the driver's licenses of Tim and Pastor Victor who gave Mr. Kim their IDs. He asked George what he was doing at the bank and George said he wanted to withdraw funds. Immediately, Mr. Kim's face dropped and he said to come with him.

389)    Defendant Kim then had the Tim, Victor, and George sit in his cubicle.

390)    Defendant Kim then asked what George wanted to do again.

391)    Baffled, George explained he needed funds for his full-time caregivers. Tim also piped in that George fell and needed care (not that anyone has to explain anything to a bank manager).

392)    Defendant Kim then strangely said he needed to get someone. He then came back with the branch manager Defendant Lacie Chey (no relation to Plaintiffs) who approached.

393)    George again told Defendant Lacie that he needed cash out of his checking account to help with his health as he had cancer.

394)    Defendant Lacie looked at Defendant Kim and shook her head. She then told elderly George she couldn't help.

395)    Tim then stood up and asked why.

396)    Defendant Lacie and Defendant Kim were both silent and then said if there's anything more they could do for the Chey family.

397)    "Are you saying our father is not allowed to get his funds out," Pastor Vic asked in disbelief.

398)    "That's correct," said Defendant Kim.

399)    Elderly George was heart-broken as they left the bank.

400)    **Plaintiffs were left stunned by the actions of Defendant Chase Bank.**

401)    Immediately upon getting home, Tim emailed Chase Bank to let them know what was going on.

402)     Instead of Defendant Chase Bank doing the right thing and getting elderly George his funds, the bank instead hired Greenberg Taurig a top law firm in Century City, California to respond.

403)     Instead of Greenberg Taurig responding to try to resolve the issue, the Greenberg attorney tried to escalate the issue.

404)     In fact, Greenberg Taurig may have called the Welfare department as soon after a strange visitor came telling elderly George they were from the city's welfare department and someone had called in to have them come.

405)     If this is true, Plaintiffs will file a $100 million lawsuit against Greenberg Taurig and their attorneys.

406)     In the meantime, Tim and Victor had to find a way to pay for the full-time caregivers who were going to give care to elderly George by helping him to the bathroom.

407)     As elderly George still had his JPMorgan Private Client accounts, George called his advisor but they did not return his calls.

408)     Next Tim tried. No one responded. The advisor's name was on the statement.

409)     Tim, an attorney, then emailed Dylan Fallik, an attorney at JPMorgan Chase (See EXHIBIT A-1):

*"Law Firm" <lawfirmofconsumerjustice@activist.com>*
*"Fallik, Dylan" <dylan.fallik@jpmchase.com>*
*Sep 27, 2021 5:19:02 PM*
***Hi Mr./Ms. Fallik:***

***We have a very very serious problem on our hands.***

***I have the Power of Attorney for my father George S. Chey***

*The branch of Chase Private Client Group and the main banking branch have committed stark elder abuse – a complete violation of Caifornia law - by refusing to help us in any way - in fact, two of them just stood there refusing to help my elderly father to check on his acccount.*

*Then TODAY, we inquired with Chase Private Client Group - same branch office 1600 N. Vermont Ave, Hollywood CA 90027 (323 662 4126) and again same response - zero help.*

*The balance on the Chase/JP Morgan account is $503,000. This is NOT a small amount and my father desperately needs these funds to help with his costly health care. The Chase Private account is: 963-37178 You are welcome to call me anytime: 310 695 7119 - but this must be resolved by next Monday, October 4, 2021 or I will be forced to file an Ex Parte Application with the LA Superior Court which would be the most severely ridiculous action I've ever filed in my 27 years of practicing litigation law.*

*Very truly yours,*
*Timothy A. Chey, Esq*
*Attorney at Law*
*Law Offices of Consumer Justice*
*Arco Tower*
*1055 West 7th Street*
*33rd Floor (Penthouse)*
*Downtown LA, CA 90017*

410)     Chase Bank then hired Greenberg Taurig and Counsel Karin Bolmholdt ignored Plaintiff Tim's demand to open his father's account so his dying dad could access the funds for his caregivers.

411)     Ms. Bolmholt – instead of defusing the situation and finding a solution to get a dying man his funds – kept emailing Plaintiff to stop communicating with the Chase office – it was a playbook out of a typical non-caring attorney defending her Fortune 500 client. It was beyond litigation privilege but a malicous act against a dying elderly man (see EXHIBIT F).

412)     Plaintiff Tim to help his dying father had no choice but to email an Ex Parte notice to Chase Bank and Attorney Bolmholt. He should never had had to do this.

413)     In the meantime, someone at either Chase Bank or Greenberg Taurig – the most vicious and despicable means – actually called the LA Welfare Department and had a representative actually come to the elderly George residence because she received a call of possible elder abuse.

414)     It was an astonishing and vile act. Defendants were committing elder abuse and actually tried to deflect it by accusing Pastor Victor and Tim of elder abuse.

415)     More discovery will determine who called the LA Welfare office and whoever did will be added to this lawsuit including Greenberg Taurig if this firm called and falsely reported elder abuse.

416)     On October 14, 2022 – more than 3 weeks since JPMorgan Chase first learned of this dire situation -  Ms. Bolmholt wrote that Chase Bank wished to terminate its banking relationship with elderly George for no reason and that Plaintiff Tim was not allowed to enter any Chase Bank (see Exhibit G).

417)     It was the most outrageous and horrific day in the life of both Plaintiffs. No one deserves this treatment especially from a large publically-traded bank.

418)     On February 14, 2022, elderly George passed away a heartbroken man.

419)     These horrific actions by banks must end.

420)     Plaintiffs understand the need to protect against scammers but banks cannot and do not have any powers to tell family members of a dying man they could be possible scammers.

**On or about July 2022, Plaintiffs Realized They were Being Defrauded By Chase Bank and JPMorgan Private Client**

421)     On or about July 2022, Plaintiffs began to realize they were being defrauded in a massive fraud by Chase Bank and JP Morgan Private Client.

422)     They discovered JP Morgan Chase documents that showed massive amounts in the millions down to zero.

**Elderly George Died While J.P. Morgan Securities Still Withheld His Funds**

423)     Elderly George was heartbroken and would die two months later.

424)     Plaintiffs Tim and Pastor Victor believe their father would have lived longer but for the incessant abuse of which Defendant J.P. Morgan Securities helped contribute to this financial and physical elder abuse by refusing to give elderly George his money.

425)     During the next several weeks, Plaintiff Tim had to deal with the most outrageous stall tactics by Defendant J.P. Morgan Securities to simply get his father's funds.

426)     Tim spend countless hours during the four months – maybe over 200 hours – to simply close his father's account. His father again would die two months later – a heartbroken man due to J.P. Morgan Securities's greed and unending torment to access his funds.

427)     All acts or omissions alleged to have been engaged in intent to injure plaintiff or with a willful and conscious disregard for the rights and safety of plaintiff, and were malicious and oppressive, entitling plaintiff to recover punitive damages from defendants.

## THIRTEENTH CAUSE OF ACTION
## UNFAIR COMPETITION: VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200
[As Against All Defendants]

428)     Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

429)    This is a private action brought against the Defendants, who have interfered with Plaintiff by unlawfully refusing to give elderly George his funds from JP MORGAN CHASE Bank and draining his JP MORGAN SECURITIES account. They knew their utmost loyalty should have been with their clients to maximize the sale to the fullest.

430)    Plaintiff brings this action under Business and Professional Code §17200 et seq. as persons who have suffered injuries in fact and have lost money and property as a result of the Defendants' acts described herein.

431)    At all times relevant herein, the defendants were conducting business under the laws of the State of California. In conducting said business, the Defendants were obligated to comply the laws of the State of California.

432)    The Defendants' actions as set forth above were further false, misleading and deceptive in violation of California Business and Professions Code §§17200 – 17208, as the unlawful practice occurred in connection with the Defendants' conduct of trade and commerce in California.

433)    Plaintiff is informed, believes, and alleges thereon that the defendants' violations of the law, as alleged above, constitute business practice because they were done repeatedly over a substantial period of time. These practices were the result of policies and/or practices that worked to Plaintiff's detriment as well as to the detriment of other persons and/or entities. Reasonable clients/consumers were likely to be deceived by the Defendants' conduct.

434)    Plaintiff is informed, believes, and alleges thereon that such unlawful, unfair and/or fraudulent conduct continues to this day and the defendants will continue such activities in the future unless they are enjoined from doing so, and are required to pay

restitution to Plaintiff and all other tenants to whom they caused harm by the conduct alleged herein. All profits gained by defendants from the herein alleged unfair business practices should be disgorged. Plaintiff is entitled to an injunction preventing the defendants from continuing to engage in the illegal practice alleged herein.

435)    Plaintiffs will also seek and is entitled to recover attorney's fees in connection with the cause of action under the private attorney general doctrine (Civil Code § 1021.5)

436)    All acts or omissions alleged to have been engaged in intent to injure plaintiff or with a willful and conscious disregard for the rights and safety of plaintiffs, and were malicious and oppressive, entitling plaintiff to recover punitive damages from defendants.

437)    Business & Professions Code § 17200 et seq., the Unfair Competition Law ("UCL"), provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice .... "

438)    Defendants represented that they were fiduciaries who would look out for the best interests of Plaintiff. In fact, Defendants were misrepresenting and concealing facts, imposing their will on Plaintiff by relying on superior knowledge and their pre-existing special relationship, and taking advantage of Plaintiff's economic and emotional insecurities because elderly George was old and dying.

439)    The activities as alleged herein constitute unlawful business acts and practices in violation of California Business & Professions Code section 17200 et seq. These activities done in violation of California Business & Professions Code section 17200 et seq. include violations of Defendant's obligations under California law governing banking and investment professionals.

440)    As a direct and proximate result of these unlawful business practices, Plaintiffs have been damaged in an amount to be proven at trial but in excess of the jurisdictional amount required in unlimited civil cases.

441)    All the elements of unfair competition have been met in this extreme deceitful conduct of Defendants.

442)    <u>All of the elements in this cause of action have been starkly met</u>.

443)    Plaintiff performed all obligations required by to be performed under the written, signed contract except for those obligations waived, excused, or prevented by Defendant.

## FOURTEENTH CAUSE OF ACTION
## CIVIL CONSPIRACY
### [As Against All Defendants]

444)    Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

445)    A conspiracy claim consists of (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of common purpose; and (3) actual legal damage.

446)    The conduct complained of herein was undertaken pursuant to the policy, practice or custom of all Defendants, the executives, and others, knew that deceiving their own clients deprive numerous individuals of their rights. Despite this knowledge, J.P. Morgan Securities's administration failed to take any remedial or corrective actions. In failing to take corrective measures in the areas of hiring, training, supervision, and monitoring, Defendant J.P. Morgan Securities and other Defendants have exhibited and continue to

exhibit deliberate indifference to the rights of Plaintiffs Victor and Timothy and especially their elderly dying father.

447)    As a direct and proximate cause of the aforementioned acts of Defendants, plaintiff was injured as set forth in the paragraphs above.

448)    As an actual and proximate result of Defendants' conduct, Plaintiffs have suffered, and continues to suffer, general and special damages, including but not limited to, losses in earnings, and have suffered and continue to suffer pain, suffering, embarrassment, humiliation, emotional distress, severe emotional distress, and mental anguish in an amount according to proof.

449)    Plaintiffs intend to bring justice to this case if it takes them 20 years. They will not stop until all the parties are brought to justice before a jury of peers.

450)    All acts or omissions alleged to have been engaged in intent to injure plaintiffs or with a willful and conscious disregard for the rights and safety of plaintiffs, and were malicious and oppressive, entitling plaintiff to recover punitive damages from defendants.

## FIFTEENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

[As Against All Defendants]

451)     Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

452)     All Defendants should have known, that their failure to exercise due care in the performance of their duties under the statutes as alleged above in furtherance of the terms of the contract would cause Plaintiff severe emotional distress.

453)    The actions of Defendants in initiating, proceeding with, and failing to communicate with one another or Plaintiffs about their trust accounts and the accurate

amounts actually due from Plaintiff constituted breaches of duty and breaches of contract as alleged above.

454)    As a proximate result of Defendants acts and omissions constituting breaches of duty and breaches of contract, Plaintiff has been wrongfully and improperly threatened and unable to access their accounts at either JP MORGAN SECURITIES or JPMORGAN CHASE BANK.

455)    As a further proximate result of Defendants' breaches of duty and breaches of contract Plaintiffs suffered severe emotional distress and mental suffering, all to their damage. The actions and conduct of Defendants was exacerbated in that they were made aware of Plaintiffs already fragile emotional state and distress owing to the state of elderly George dying of 4th stage cancer.

456)    The Defendants engaged in extreme and outrageous conduct. Any form of fraud, even a single instance, is extreme and outrageous to the victims of such fraud. Being defrauded on any ground is outrageous and causing extreme distress and sadness.

457)    The Defendants engaged in the aforementioned outrageous conduct with reckless disregard of the probability that such conduct would result in harms and injuries that would result in severe emotional distress to Plaintiff.

458)    Plaintiffs did in fact suffer and continue to suffer severe emotional distress as a result of the harms and injuries caused by the Defendants' outrageous conduct, as alleged herein.

459)    The Defendants' outrageous conduct was the actual and proximate cause of Plaintiff's emotional distress, severe diabetes, depression, loss of interest, loss of revenue of their film revenues.

460)    The wrongful acts of the Defendants were done maliciously, oppressively, fraudulently, and in conscious disregard of the safety and health of Plaintiff.

461)    Plaintiffs incorporate herein by reference as though fully set forth the punitive damage allegations contained in herein. WHEREFORE, Plaintiff prays for relief set for below.

462)    Defendants acted with malice, oppression, and/or conscious disregard for the statutory rights of Plaintiffs by engaging in the conduct alleged in this cause of action. Such wrongful and intentional acts justify an award of punitive damages.

## SIXTEENTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
[As Against All Defendants]

463)    Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

464)    In committing the acts and omissions described more fully in paragraphs above, inclusive, Defendants knew or should have known that their conduct would result in plaintiffs suffering severe emotional distress and that Defendants's acts and omissions were perpetrated with the intent to inflict or with reckless disregard for the probability of inflicting humiliation, mental anguish and severe emotional distress on Plaintiffs.

465)    As a direct and proximate result of the Defendants's conduct as described herein, Plaintiffs have suffered and/or continue to suffer humiliation, mental anguish, nervous shock severe emotional distress, attendant physical injuries and conditions, and other special and general damages in amounts according to proof. Further, Plaintiffs were injured as alleged in the paragraphs above.

466)    As set forth above, Defendants, and each of them, engaged in extreme and

outrageous conduct by intentionally and/or recklessly discriminating, harassing Plaintiff in the manners set forth above. Defendants, and each of them, ratified such conduct by failing and refusing to take any and all reasonable steps necessary to prevent such conduct from occurring and failing to take appropriate corrective action following such conduct and, as a direct and legal result, Plaintiffs were harmed, and continues to suffer harm, in an amount to be proved at trial.

467)     Plaintiff Tim also suffered from increased acute diabetes from the stress, severe depression, and loss of income as a film producer and director.

468)     Plaintiffs are informed and believes and thereon alleges that Defendants and each of them, their agents and/or assigns failed to investigate the matter in an adequate manner necessary to prevent foreseeable harm to Plaintiffs by all Defendants.

469)     As a direct and legal result of Defendants' willful, wanton, intentional, malicious and/or reckless conduct, Plaintiffs suffered severe and extreme mental and emotional distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort and anxiety, the exact nature and extent of which are not now known to Plaintiffs.

470)     Plaintiffs are informed and believes and thereon alleges that the Defendants, and each of them, by engaging in the aforementioned acts and/or in ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard of the rights, welfare and safety of Plaintiffs, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

## SEVENTEENTH CAUSE OF ACTION
## NEGLIGENT SUPERVISION

[As against JPMorgan Chase, J.P. Morgan Securities, DOES 1-100]

471)     Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

472)     Plaintiffs are informed and believe and thereon alleges that in doing the acts as heretofore alleged, Defendants J.P. Morgan Securities and Does 21-25, knew, or in the exercise of reasonable diligence should have known, that Defendants were engaged in acts of deceit and breach of fiduciary duty and that an undue risk to persons such as Plaintiffs' would exist because of a lack of adequate training or supervision of Defendants in the tasks of their employment.

473)     Notwithstanding the knowledge that Defendants and Does 21-25 were required to oversee and supervise the activities of Defendants in the course of their acting as investment advisors for J.P. Morgan Securities and bankers at JPMorgan Chase Bank and did not adequately train or supervise Defendant in the performance of their duties.

474)     The failure to adequately train or supervise Defendants was the proximate cause of Plaintiffs injury, as had Defendants been trained and supervised concerning banking transactions to which they were acting in their fiduciary capacities, the fraud and breaches of fiduciary duty alleged in this complaint would not have occurred. Especially in light of the Investment regulator's stark communications warning all investment advisors and bankers that the laws that are severe.

287)     As a direct and proximate result of the failure to property train and supervise Defendants were able to defraud Plaintiffs of a substantial value of Plaintiffs life savings by reasons of which Plaintiffs have been damaged in an amount to be proven at trial but in excess of the jurisdictional amount required in unlimited civil cases. And further that

they committed stark elder abuse of an elderly 92-year old dying man. Something has to change at J.P. Morgan Securities and the laws in this country to protect seniors.

# EIGHTEENTH CAUSE OF ACTION
# WRONGFUL CONVERSION / MAIL FRAUD

[As Against All Defendants]

475)    Plaintiffs repeat and reallege each and every allegation contained in paragraphs above as if fully set forth herein.

476)    The elements of wire fraud under Section 1343 directly parallel those of the mail fraud statute, but require the use of an interstate telephone call or electronic communication made in furtherance of the scheme. *United States v. Briscoe*, 65 F.3d 576, 583 (7th Cir. 1995) (*citing United States v. Ames Sintering Co.*, 927 F.2d 232, 234 (6th Cir. 1990) (per curiam)); *United States v. Frey*, 42 F.3d 795, 797 (3d Cir. 1994) (wire fraud is identical to mail fraud statute except that it speaks of communications transmitted by wire); *see also*, *e.g.*, *United States v. Profit*, 49 F.3d 404, 406 n. 1 (8th Cir.)

477)    Defendants committed stark wire fraud which is also punishable by up to 20 years in prison and a $250,000 fine.

478)    Defendants used email to Plaintiffs to further their schemes in interstate commerce as Plaintiff Tim was in Florida and Hawaii during these communications.

479)    Plaintiff Tim again is a Harvard and USC alumnus, film director and respected attorney and Co-Trustee.

480)    To reiterate the point again, had Plaintiff not been deceived by Defendants's action, Plaintiff would not have never hired or used JPMorgan Chase Bank or JP Morgan Securities and it's investment arm.

481)     This is cut and dry proof to the Honorable Court and to the jury that Defendants's actions merit severe punitive damages.

482)     Plaintiffs lost countless hours trying to access cash to help their father after Defendant's fraud and deceit, and the horrendous time and extreme emotional suffering including bouts of severe diabetes, depression, counseling, medical issues, inability to complete film projects costing enormous damages possibly.

483)     As a direct and proximate result of the foregoing material breaches, Plaintiff has been damaged in an aggregate amount to be determined at trial, in far excess of the jurisdictional minimum.

## NINETEENTH CAUSE OF ACTION
## VIOLATION OF THE LANHAM ACT

[As Against All Defendants]

484)     Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

485)     The false-advertising section of the Lanham Act (commonly known as Section 43(a)) provides as follows:

> Any person who...uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities ....shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
> 15 U.S.C. § 1125(a)(1)(B)

486)     Defendants brazenly violated the Lanham Act by their actions as set forth completely in the facts above.

487)    Or or about June 2021 to August 2021, elderly George began to fall to the ground and went to the hospital where they uncovered 4th stage stomach and pancreatic cancer.

488)    He needed full-time caregivers if he were to stay in his house. This medical care cost over $16,000 a month between two of the caregivers.

489)    Immediately George's two sons Tim and Pastor Victor began doing deep dives into George's accounts and saw funds were available at Defendants J.P. Morgan Securities and JPMorgan Chase Bank.

490)    Tim is a faith-based filmmaker and was not wealthy enough to handle this monthly expense. He is also a pro-bono attorney helping ministries and did not make much as a normal lawyer would.

491)    Neither was Pastor Victor who is a full-time pastor at a Baptist church.

492)    The father of the Plaintiffs was a distinguished man who helped the city of LA by creating a bank to serve and assist all members of the community, and raising millions of dollars for the Good Samaritan Hospital as the advisor to the president. He was also a devout man of faith who did all he could to serve the Southern California community at large. Their father was the chairman and founder of a NASDAQ-traded company

**Elderly George Could Not Access Any Funds Out of Either JPMorgan Chase Bank or J.P. Morgan Securities as He Was Dying of 4th Stage Cancer**

493)    On or about September 27, 2021, Tim and his brother Pastor Victor took their elderly father George into the local Chase Bank to withdraw George's funds for George's medical care.

494)    They were immediately met by Defendant David Kim who knew and greeted elderly George.

495)    Defendant Kim then asked to see the driver's licenses of Tim and Pastor Victor who gave Mr. Kim their IDs. He asked George what he was doing at the bank and George said he wanted to withdraw funds. Immediately, Mr. Kim's face dropped and he said to come with him.

496)    Defendant Kim then had the Tim, Victor, and George sit in his cubicle.

497)    Defendant Kim then asked what George wanted to do again.

498)    Baffled, George explained he needed funds for his full-time caregivers. Tim also piped in that George fell and needed care (not that anyone has to explain anything to a bank manager).

499)    Defendant Kim then strangely said he needed to get someone. He then came back with the branch manager Defendant Lacie Chey (no relation to Plaintiffs) who approached.

500)    George again told Defendant Lacie that he needed cash out of his checking account to help with his health as he had cancer.

501)    Defendant Lacie looked at Defendant Kim and shook her head. She then told elderly George she couldn't help.

502)    Tim then stood up and asked why.

503)    Defendant Lacie and Defendant Kim were both silent and then said if there's anything more they could do for the Chey family.

504)    "Are you saying our father is not allowed to get his funds out," Pastor Vic asked in disbelief.

505)    "That's correct," said Defendant Kim.

506)    Elderly George was heart-broken as they left the bank.

507)    **Plaintiffs were left stunned by the actions of Defendant Chase Bank.**

508)    Immediately upon getting home, Tim emailed Chase Bank to let them know what was going on.

509)    Instead of Defendant Chase Bank doing the right thing and getting elderly George his funds, the bank instead hired Greenberg Taurig a top law firm in Century City, California to respond.

510)    Instead of Greenberg Taurig responding to try to resolve the issue, the Greenberg attorney tried to escalate the issue.

511)    In fact, Greenberg Taurig may have called the Welfare department as soon after a strange visitor came telling elderly George they were from the city's welfare department and someone had called in to have them come.

512)    If this is true, Plaintiffs will file a $100 million lawsuit against Greenberg Taurig and their attorneys.

513)    In the meantime, Tim and Victor had to find a way to pay for the full-time caregivers who were going to give care to elderly George by helping him to the bathroom.

514)    As elderly George still had his JPMorgan Private Client accounts, George called his advisor but they did not return his calls.

515)    Next Tim tried. No one responded. The advisor's name was on the statement.

516)    Tim, an attorney, then emailed Dylan Fallik, an attorney at JPMorgan Chase (See EXHIBIT A-1):

*"Law Firm" <lawfirmofconsumerjustice@activist.com>*
*"Fallik, Dylan" <dylan.fallik@jpmchase.com>*
*Sep 27, 2021 5:19:02 PM*
**Hi Mr./Ms. Fallik:**

*We have a very very serious problem on our hands.*

*I have the Power of Attorney for my father George S. Chey*

*The branch of Chase Private Client Group and the main banking branch have committed stark elder abuse – a complete violation of Caifornia law - by refusing to help us in any way - in fact, two of them just stood there refusing to help my elderly father to check on his acccount.*

*Then TODAY, we inquired with Chase Private Client Group - same branch office 1600 N. Vermont Ave, Hollywood CA 90027 (323 662 4126) and again same response - zero help.*

*The balance on the Chase/JP Morgan account is $503,000. This is NOT a small amount and my father desperately needs these funds to help with his costly health care. The Chase Private account is: 963-37178 You are welcome to call me anytime: 310 695 7119 - but this must be resolved by next Monday, October 4, 2021 or I will be forced to file an Ex Parte Application with the LA Superior Court which would be the most severely ridiculous action I've ever filed in my 27 years of practicing litigation law.*

*Very truly yours,*
*Timothy A. Chey, Esq*
*Attorney at Law*
*Law Offices of Consumer Justice*
*Arco Tower*
*1055 West 7th Street*
*33rd Floor (Penthouse)*
*Downtown LA, CA 90017*

517)     Chase Bank then hired Greenberg Taurig and Counsel Karin Bolmholdt ignored Plaintiff Tim's demand to open his father's account so his dying dad could access the funds for his caregivers.

518)     Ms. Bolmholt – instead of defusing the situation and finding a solution to get a dying man his funds – kept emailing Plaintiff to stop communicating with the Chase office – it was a playbook out of a typical non-caring attorney defending her Fortune 500 client. It was beyond litigation privilege but a malicous act against a dying elderly man (see EXHIBIT F).

519)     Plaintiff Tim to help his dying father had no choice but to email an Ex Parte notice to Chase Bank and Attorney Bolmholt. He should never had had to do this.

520)     In the meantime, someone at either Chase Bank or Greenberg Taurig – the most vicious and despicable means – actually called the LA Welfare Department and had a representative actually come to the elderly George residence because she received a call of possible elder abuse.

521)     It was an astonishing and vile act. Defendants were committing elder abuse and actually tried to deflect it by accusing Pastor Victor and Tim of elder abuse.

522)     More discovery will determine who called the LA Welfare office and whoever did will be added to this lawsuit including Greenberg Taurig if this firm called and falsely reported elder abuse.

523)     On October 14, 2022 – more than 3 weeks since JPMorgan Chase first learned of this dire situation -  Ms. Bolmholt wrote that Chase Bank wished to terminate its banking relationship with elderly George for no reason and that Plaintiff Tim was not allowed to enter any Chase Bank (see Exhibit G).

524)     It was the most outrageous and horrific day in the life of both Plaintiffs. No one deserves this treatment especially from a large publically-traded bank.

525)     On February 14, 2022, elderly George passed away a heartbroken man.

526)     These horrific actions by banks must end.

527)     Plaintiffs understand the need to protect against scammers but banks cannot and do not have any powers to tell family members of a dying man they could be possible scammers.

**On or about July 2022, Plaintiffs Realized They were Being Defrauded By Chase Bank and JPMorgan Private Client**

528)    On or about July 2022, Plaintiffs began to realize they were being defrauded in a massive fraud by Chase Bank and JP Morgan Private Client.

529)    They discovered JP Morgan Chase documents that showed massive amounts in the millions down to zero.

**Elderly George Died While J.P. Morgan Securities Still Withheld His Funds**

530)    Elderly George was heartbroken and would die two months later.

531)    Plaintiffs Tim and Pastor Victor believe their father would have lived longer but for the incessant abuse of which Defendant J.P. Morgan Securities helped contribute to this financial and physical elder abuse by refusing to give elderly George his money.

532)    During the next several weeks, Plaintiff Tim had to deal with the most outrageous stall tactics by Defendant J.P. Morgan Securities to simply get his father's funds.

533)    Tim spend countless hours during the four months – maybe over 200 hours – to simply close his father's account. His father again would die two months later – a heartbroken man due to J.P. Morgan Securities's greed and unending torment to access his funds.

534)    Defendants never apologized for their misconduct.

535)    Plaintiffs have smoking-gun evidence of this (see Exhibits A-H) and several key witnesses who will testify at trial, including officers at local branches of J.P. Morgan Securities.

536)    Plaintiff Tim clearly stated to Defendants how important it was for elderly George to live at his house. He was moved to a temporary facility as Plaintiffs had no funds of their own.

537)    Further, Defendants J.P. Morgan Securities and Defendant David Kimmay have violated **Penal Code 487**. A criminal defendant violates Penal Code Section 487 when they attempt to defraud another person out of money or property by way of false representations or promises.

538)    More information is needed during intensive discovery including admissions, production of documents and depositions of all the buyers, bankers, and investment advisors of George from JP MORGAN SECURITIES involved in this tragic story.

539)    Defendants acted with malice, oppression, and/or conscious disregard for the statutory rights of Plaintiffs by engaging in the conduct alleged in this cause of action. Such wrongful and intentional acts justify an award of punitive damages.

## <u>TWENTIETH CAUSE OF ACTION</u>
## <u>BREACH OF ORAL CONTRACT</u>

[As Against All Defendants]

540)    Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

541)    All of the elements of an oral contract were met and contained the necessary elements found in all contracts (e.g., offer, <u>acceptance</u>, consideration, and mutuality or a "meeting of the minds").

542)    This is text-book case of a breach of an oral contract.

543)    Plaintiff performed all obligations required by to be performed under the oral and texted agreement except for those obligations waived, excused, or prevented by Defendant.

544)    <u>Defendants at JP MORGAN SECURITIES told Plaintiffs they would do their the utmost to take care of elderly George' life savings with integrity and honesty. They didn't.</u>

Complaint - 84

545)    <u>Defendants at JPMORGAN CHASE BANK including the bank managers told Plaintiffs they would get George's fund within a day. It took more than 4 months.</u>

546)    <u>Defendants may have also committed wire fraud in violation of California Penal Code 502.</u>

547)    All acts or omissions alleged to have been engaged in intent to injure plaintiff or with a willful and conscious disregard for the rights and safety of plaintiff, and were malicious and oppressive, entitling plaintiff to recover punitive damages from defendants.

### TWENTY-FIRST CAUSE OF ACTION
### BREACH OF DUTY OF CARE

[As Against All Defendants]

548)    Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

549)    Defendants all owed a duty of care to the Plaintiff and Defendant JPMorgan Chase Bank breached that duty by allowing Defendants to harm Plaintiff.

550)    Defendant's conduct contributed to the significant health declines of Plaintiff Tim through the stress and wanton behavior of all Defendants. This will be proven in the Court of law. The enormous stress of Tim having to find money during his father dying led to an increase in his diabetes and increase in depression where he had to seek clinical counseling at his church.

551)    Defendants acted with malice, oppression, and/or conscious disregard for the statutory rights of Plaintiff by engaging in the conduct alleged in this cause of action. Such wrongful and intentional acts justify an award of punitive damages.

### TWENTY-SECOND CAUSE OF ACTION
### INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

[As Against All Defendants]

552)    Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

**553)**    "The five elements for intentional interference with prospective economic advantage are: (1) [a]n economic relationship between the Plaintiffs and some third party, with the probability of future economic benefit to the Plaintiffs; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the Plaintiffs proximately caused by the acts of the defendant." (*Youst v. Longo* (1987) 43 Cal.3d 64, 71, fn. 6 [233 Cal.Rptr. 294, 729 P.2d 728].)

554)    All of the elements in this cause of action have been starkly met.

555)    It is starkly clear and transparent that all Defendants interfered with the Plaintiff's economic benefits and their relationship with their father, family and their church and film projects.

556)    This is another text-book cause of action that goes against all ethical standards of the banking and investment industry.

557)    Defendants acted with malice, oppression, and/or conscious disregard for the statutory rights of Plaintiff by engaging in the conduct alleged in this cause of action. Such wrongful and intentional acts justify an award of punitive damages.

## TWENTY-THIRD CAUSE OF ACTION
## WILLFUL, WANTON AND RECKLESS CONDUCT

[As Against Defendants Ammann, Sandovol, and Thonnes]

558)    Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

559)    Proof of willful, wanton, reckless conduct involves a high degree of likelihood that substantial harm will result to another.

560)    Two things distinguish willful, wanton, reckless conduct from negligence. First, the defendant must knowingly or intentionally disregard an unreasonable risk. Second, the risk must entail a high degree of probability of causing substantial harm.

561)    Defendants knew their brazen and dishonest actions could cause enormous stress to Plaintiffs and even his death.

562)    Plaintiff's father was dying but still had more months to live. The stress of Defendants caused him to die earlier.

563)    This is a grave injustice brought by Defendant JPMorgan Chase Banks and J.P. Morgan Securities and all the employees who thought this was a big joke or didn't take their jobs seriously or refused to honor and protect the life savings of an elderly man.

564)    Plaintiff Tim became severely ill and was treated by his doctors. His diabetes increased 40% and he almost suffered a nervous breakdown. These were all foreseeable actions as a result of Defendant's collective actions in deliberate wanton conduct. A possible $14 million loss is an incredible loss suffered by Tim and Vic due to the juvenile greed of the bankers at J.P. Morgan Securities. And the loss of their father was too much to bear.

565)    Plaintiff Tim lost over $6 million in lost film projects as a direct result of the Defendant's actions.

566)    Plaintiffs will fight to bring justice for this horrific, wanton, reckless and indifferent conduct of Defendants.

567)    Defendants acted with malice, oppression, and/or conscious disregard for the

statutory rights of Plaintiff by engaging in the conduct alleged in this cause of action. Such wrongful and intentional acts justify an award of punitive damages.

## TWENTY-FOURTH CAUSE OF ACTION

## GROSS NEGLIGENCE

[As against All Defendants]

568)     Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein

569)     The defendants, and each of them, recklessly, negligently and carelessly disregarded State law and their own banking and investment regulations failing to be aware of all relevant State and/or local laws.

570)     At all times relevant hereto, the defendants, and each of them, violated State and/or local laws regarding consumer banking regulations and investment regulations.

571)     All Defendants also committed stark elder abuse.

572)     It was reasonably foreseeable that as a result of the negligent and careless actions that Plaintiffs would be harmed and were harmed.

573)     As a direct and proximate result of said actions and/or inactions of the defendants, Plaintiff was caused to sustain extreme injuries and damages as set forth herein.

## TWENTY-FIFTH CAUSE OF ACTION

## PROMISSORY ESTOPPEL

[As Against All Defendants]

574)     Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

575)     "The elements of promissory estoppel, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b)

knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." [Citations.]' Each element must be alleged with particularity." (Beckwith v. Dahl (2012) 205 Cal.App.4th 1039, 1059–1060 [141 Cal.Rptr.3d 142], internal citations omitted.)

576) All of these elements are contained in the above facts – stark facts that are without dispute and lay the solid ground of prima facie evidence.

577) Defendants acted with malice, oppression, and/or conscious disregard for the statutory rights of Plaintiff by engaging in the conduct alleged in this cause of action. Such wrongful and intentional acts justify an award of punitive damages.

## TWENTY-SIXTH CAUSE OF ACTION
## PRE-JUDGMENT WRIT OF ATTACHMENT

[As Against Defendant David Kim]

578) Plaintiffs repeat and reallege each and every allegation contained in paragraphs as if fully set forth herein.

579) Plaintiffs will be seeking a Writ of Attachment against Defendant David Kim  and Defendant Lacie Chey assets that allow the Plaintiffs within a lawsuit to seek a "prejudgment writ of attachment" by which it can freeze certain assets of a debtor/Defendants.

580) Plaintiffs believe Defendant J.P. Morgan Securities and JPMorgan Chase Bank are strong financial companies that will not hide its assets so the Writ of Attachment only applies to Defendants David Kim and Lacie Chey (no relations to Plaintiffs)

581) Certain criteria must be met by the creditor for it to succeed in obtaining a prejudgment writ of attachment as set forth:

   - The underlying claim by the Plaintiffs must be based upon a contract;

- The Plaintiffs must show the "probable validity" of the claim against the Defendants; Plaintiffs are informed and believes that the prejudgment writ of attachment is valid in this Case, all of the elements and requriements proved by a preponderance of the evidence, and will seek an immediate writ by this Court after the suit commences.

582)    Plaintiffs will seek a Writ of Attachment on Defendant Oybek Giyazov's houses, bank accounts, and individual property until this dispute is resolved. This includes freezing any assets and future assets until the final outcome and/or Plaintiffs prevails.

## TWENTY-SEVENTH CAUSE OF ACTION
## VIOLATION OF THE RICO STATUTE

[As Against All Defendants]

583)     Plaintiffs hereby reallege and incorporate by reference, each and every allegation contained in the Complaint, as though fully set forth herein.

584)     Defendants, collectively, are an enterprise that is engaged in interstate commerce within the United States through the rental of properties online. Defendants are funded with money that include proceeds from possible illegal activities. Plaintiffs believe, after discovery, that Defendants operated a fraudulent-inducing, illegal scheme to defraud consumers especially elderly citizens and go around the very strict guidelines set by the banking laws and State of California.

585)     Plaintiff Tim was in Hawaii and Florida during some of the illegal acts by Defendants helping his father across state lines.

586)     Defendant J.P. Morgan Securities (corporate office) has been sued multiple times over abuse of consumers in several states. They have 2,107 offices in 21 states.

587)     Defendants have engaged in a pattern of illegal activity in that they have engaged in multiple financial transactions with the knowledge that the transactions were designed

to conceal the true nature of dual agency. Defendants J.P. Morgan Securities were made aware of these acts and refused to act on them which is in itself illegal as it violated California law and other states.

588)    Defendants have used the proceeds of consumers including Plaintiff's initial funds to them to fund their enterprise in direct violation of the RICO statute.

589)    Plaintiffs have been enormously injured by these violations. The amount of the resulting damages will be proven during discovery and during the trial.

## TWENTY-EIGHT CAUSE OF ACTION
## UNJUST ENRICHMENT

[As Against All Defendants]

590)    Plaintiff repeats and realleges each and every allegation contained in paragraphs as if fully set forth herein.

591)    As a result of Defendants's conduct alleged hereinabove, defendants have been unjustly enriched at the expense of the Plaintiffs, in their respective interests as set forth above.

592)    Plaintiffs do not yet know the full amount by which defendants, Defendants, and Does 1-10 have been so enriched, but are informed and thereon allege that said sum exceeds over over $14 million.

## TWENTY-NINE CAUSE OF ACTION
## PUNITIVE DAMAGES

[As Against All Defendants]

593)    Plaintiffs repeat and reallege each and every allegation contained in paragraphs as if fully set forth herein.

594)    Defendants, its agents and/or employees, acted with a callous indifference and/or reckless disregard for the safety, health, and welfare of Plaintiffs and/or acted in a grossly negligent manner.

595)      As a direct and legal result of this conduct, Plaintiff is entitled to stark Punitive Damages against all Defendants

596)      Plaintiff asks for punitive damages of no less than treble the actual damages.

## THIRTIETH CAUSE OF ACTION
## ACCOUNTING

[As Against All Defendants]

597)      Plaintiffs repeat and reallege each and every allegation contained in paragraphs as if fully set forth herein.

598)      As alleged above, Plaintiffs and and all Defendants were in a fiduciary relationship such that defendants owed a fiduciary duty to Plaintiffs to affirmatively protect, preserve and enhance Plaintiffs' interests, and to refrain from doing anything that would cause injury to Plaintiffs, and to act with the utmost good faith in the best interest of Plaintiffs.

599)      As alleged above, during the course of this fiduciary relationship, Defendant advisors were in control of Plaintiffs' financial investments and certain assets of the trust, and was entrusted with access to those assets to carry out their duties as an employee of Defendant J.P. Morgan Securities and JPMorgan Chase Bank

600)      During the course of the aforementioned relationship between the parties, Defendants employees may have misappropriated, stole, and embezzled property and assets of Plaintiffs to churn their commissions and/or were incompetent to lose most of the funds, which, on information and belief, were improperly retained or used to pay Defendant employees personal expenses by withdrawal of cash, as to which defendants, and each of them, have failed to account. More specifically, not helping an elderly dying man to access his funds.

601)      The amount of the funds due and owing from these transactions is unknown to

Plaintiffs and cannot be ascertained without an accounting of the financial books and records of defendants.

602)    As alleged above, all Defendants unlawfully received certain fees, commissions, and/or other income from the wrongful conduct described above. The precise amount of such sums is presently unknown to Plaintiffs and cannot be ascertained without an accounting.

603)    Plaintiffs hereby deem that this complaint shall serve as Plaintiffs' formal demand that Defendants provide a complete accounting, and to pay the amounts found due to Plaintiffs thereunder.

## THIRTY-FIRST CAUSE OF ACTION
## IMPOSITION OF A CONSTRUCTIVE TRUST

[As Against All Defendants]

604)    Plaintiffs repeat and reallege each and every allegation contained in paragraphs as if fully set forth herein.

605)    As described above, on information and belief, defendants unlawfully and maliciously misappropriated financial assets and property of Plaintiffs in violation of his fiduciary duties and obligations. These sums include all funds from JPMORGAN CHASE BANK and JP MORGAN SECURITIES. Accordingly, Plaintiffs are entitled to have all money distributed to, and any benefits realized by any Defendant advisors and all Defendants, held in trust for Plaintiffs.

606)    As described above, all Defendants have obtained Plaintiffs' account interests by theft, misappropriation, embezzlement, or malfeasance, as alleged herein.

607)    By virtue of Defendants' wrongful acts and misappropriation of Plaintiffs' monetary interests, all Defendants hold these misappropriated financial assets and

property as a constructive trustee for Plaintiffs' benefit. The precise amount of such sums
is presently unknown to Plaintiffs. By virtue of defendants' wrongful acts, all Defendants
and each of them, holds these assets and property as constructive trustees for Plaintiffs'
benefit.

608)    Defendants unlawfully received certain fees and other income from the wrongful
conduct described above. The precise amount of such sums is presently unknown to
Plaintiffs. By virtue of Defendants' wrongful acts, Defendants JP MORGAN
SECURITIES and JPMORGAN CHASE BANK hold these fees and other income as a
constructive tmstee for Plaintiffs' benefit.

609)    Plaintiffs are entitled to have all money distributed to, and any benefits therefrom
realized by Defendants or held by Defendants.

610)    By reason of the fraudulent and otherwise wrongful manner in which the
Defendants, or any of them, obtained their alleged right, claim or interest in and to the
property, Defendants, and each of them, have no legal or equitable right, claim or interest
therein, but, instead, defendants, and each of them are involuntary trustees holding said
property, money and profits therefrom in constructive trust for Plaintiffs with the duty to
convey the same to Plaintiffs forthwith.

611)    Plaintiffs have suffered substantial damages in an amount to be proven at trial.

612)    WHEREFORE, Plaintiffs pray for judgment as set forth below.

## **DAMAGES**

WHEREFORE. Plaintiff prays for judgment as follows:

1) **DEMAND FOR A FULL AND UNCONDITIONAL JURY TRIAL**

2) For special damages according to proof;

3) For exemplary and punitive damages;

4) For an order that Defendants hold all money received by them as a result of the agreement in trust for Plaintiffs;

5) For disgorgement and restitution to Plaintiffs of any revenue, profits and other consideration that Defendants have received as a result of their wrongful acts as alleged herein;

6) For Defendants to return to Plaintiffs all funds acquired by means of any act or practice declared by the court to be unlawful or fraudulent, or to constitute unfair business practices;

7) For statutory damages;

8) An award of special and general damages, pursuant to Civil Code §§17200, 2079.17, 2306, 1750, 10000;

9) An award of punitive damages, pursuant to Government Codes §17200, 2079.17, 2306, 1750, 10000;

10) An award of attorney's fees and cost, pursuant to Government Codes §17200, 2079.17, 2306, 1750, 10000; and Code of Civil Procedure § 1021.5;

11) Pursuant to Government Codes §17200, 2079.17, 2306, 1750, 10000;, that all Defendants, their employees, agents, representatives, successors, assigns, and all persons who act in concert with them will be permanently enjoined from committing any acts alleged herein.

12) For an order requiring Defendants to provide a full accounting of all fees and other income that Defendants received from the wrongful conduct described above;

13) For an order, under the authority of Corporations Code 25530, that Defendants be required to make full restitution of any money or other property that may have been acquired by Defendants in violation of Corporations Code sections 25401 and/or 25235;

14) For an order, under the authority of Corporations Code section 25530, requiring Defendants to disgorge all profits and compensation obtained by Defendants as a result of violating Corporations Code sections 25401 and/or 25235;

15) An award of up to a maximum of treble the amount of special and general damages, but in no case less than seven hundred and fifty thousand dollars ($750,000);

16) An award of attorney's fees and costs, pursuant to Civil Code § 53 and Code of Civil Procedure § 1021.5;

17) Pursuant to Civil Codes §17200, 2079.17, 2306, 1750, 10000;, that all Defendants, their employees, agents, representatives, successors, assigns, and all persons who act in concert with them will be permanently enjoined from committing any acts alleged herein.

18) For injunction preventing the Defendants from continuing to engage in the unlawful discriminatory business activities.

19) For pre- and post-judgment interest on all damages as allowed by the law at the legal rate;

20) For such other equitable relief as is just and proper.

Dated: September 21, 2024                    Respectfully submitted,

                                             Law Offices of Consumer Justice

                                             *Pastor V. George Chey*

                                             Timothy Chey, Esq,  Victor Chey

                                             Plaintiffs in pro per

1
2
3
4
5
6
7
8

## DEMAND FOR A JURY TRIAL

9
10 TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

11 Plaintiff hereby demands a jury trial in conjunction with his Complaint.

12
13
14 Dated: September 21, 2024                    Respectfully submitted,

15                                             Law Firm of Consumer Justice

16
17                                             _Pastor V. George Chey_

18
19                                             Timothy Chey, Esq

20                                             Pastor Victor Chey

21                                             *Plaintiffs (pro per)*

22
23
24
25
26
27
28

Victor Chey (in pro per)
Timothy Chey, Esq (in pro per); State Bar No. 172096
Attorney at Law
Law Firm of Consumer Justice
Fox Tower
2121 Avenue of the Stars
8th Floor
Century City, CA 90067
LawFirmofConsumerJustice@Activist.com; Tel: 424 388 0058

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| Victor Chey, | Case No:_____ |
| Timothy Chey, | |
| Plaintiffs, | |
| vs. | |
| | **<u>DECLARATION OF VICTOR CHEY</u>** |
| JPMORGAN CHASE BANK, N.A., a | |
| business entity; J.P. MORGAN | |
| SECURITIES, LLC; J.P. MORGAN | |
| CLEARING CORP.; DAVID KIM; LACIE | |
| CHEY, and DOES 1 through 10 inclusive, | |
| Defendants | |

**<u>DECLARATION OF VICTOR CHEY</u>**

I, VICTOR CHEY, declare, under the penalty of perjury and under oath, as follows:

**<u>DECLARATION OF VICTOR CHEY</u>**

I, VICTOR CHEY, declare, under the penalty of perjury and under oath, as follows:

1. I am currently a pastor at a Baptist Church in Irvine, California.

2. I am an alumnus of Biola University, Talbot School of Theology, and have been serving in ministry for 36 years.

3. I was born in Los Angeles, CA.

4. On or about August 2021, I first heard that my father was taken to the hospital where I quickly drove from Irvine to see him

5. Our father George was a distinguished man who helped the city of LA by creating a bank (Hanmi Bank) to serve and assist all members of the community, and raising millions of dollars for the Good Samaritan Hospital as the advisor to the president. He was also a devout man of faith, who did all he could to serve the Southern California community at large. He and his wife Elizabeth left his houses and estate including bank funds for my brother Tim and myself.

6. We trusted JPMorgan Chase Bank where my father had so much funds in it and never believed they would betray us.

7. Our loyalty was rewarded by betrayal and double-dealing instead.

8. I went to Chase Bank in Los Feliz on Vermont Ave with my precious father and my brother Tim. Our feeble father could barely walk so Tim and I had to help him as he fell several times and we didn't want him to break any bones.

9. We met with David Kim at the door and told him who we were.

10. We gave him our IDs which we thought was strange as he said he knew our dad well.

11. Our IDs confirmed who we were and our father told Mr. Kim we were his children.

12. David Kim ushered us into his office and then called Lacie Chey over. Both of them said our father could not withdraw any money. They refused to explain why.

13. We were absolutely baffled that they refused to help us.

14. This was a horrendous loss considering our dad was dying of 4th stage cancer and needed his funds to pay for full-time healthcare providers.

15. My brother Tim tried his level best to get either Chase Bank or J.P. Morgan Securities to let our dying father have his money.

16. They refused.

17. Our father died a heart-broken man.

18. As a born-again Christian we are commanded to forgive and love our enemies and this is what I chose to do. However, Scripture also demands justice which is why we're filing this suit. To protect elderly people from going through what our father went through.

19. <u>At no time did Mr. David Kimor his team ever apologize for their actions.</u>

I declare under penalty of perjury under the laws of this Honorable Court that the foregoing is true and correct. I understand that pejury is a criminal offense in the State of California.

<div align="center">Executed on September 21, 2024, at Orlando, Florida</div>

*Pastor V. George Chey*

Pastor V. George Chey

Declarant

## <u>VERIFICATION</u>

I, V. GEORGE CHEY, am a declarant in the above-entitled matter. I have read the foregoing:

**PASTOR V. GEORGE CHEY DECLARATION**

and know the contents thereof. The same is true of my own knowledge, except as to those

matters which are therein stated on information and belief, and, as to those matters, I believe it to

be true.

     Executed on September 2, 2024, at Orlando, Florida.

     I declare (or certify) under penalty of perjury that the foregoing is true and correct.

*Pastor V. George Chey*

Pastor V. George Chey, Declarant

**Victor Chey (in pro per)**
**Timothy Chey, Esq (in pro per); State Bar No. 172096**
**Attorney at Law**
**Law Firm of Consumer Justice**
**Fox Tower**
**2121 Avenue of the Stars**
**8th Floor**
**Century City, CA 90067**
**LawFirmofConsumerJustice@Activist.com; Tel: 424 388 0058**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| **Victor Chey,** | ) Case No:_____ |
| **Timothy Chey,** | ) |
| **Plaintiffs**, | ) |
| **vs.** | ) |
| | ) <u>**DECLARATION OF TIMOTHY CHEY**</u> |
| **JPMORGAN CHASE BANK, N.A., a** | ) |
| **business entity; J.P. MORGAN** | ) |
| **SECURITIES, LLC; J.P. MORGAN** | ) |
| **CLEARING CORP.; DAVID KIM; LACIE** | ) |
| **CHEY, and DOES 1 through 10 inclusive,** | ) |
| **Defendants** | ) |

## <u>DECLARATION OF TA CHEY</u>

I, TA CHEY, declare, under the penalty of perjury and under oath, as follows:

1. I am the faith-based film writer / director of over 16 movies including 'Freedom' (Cuba Gooding Jr., Sharon Leal) for Showtime; 'The Islands' (Mira Sorvino, John Savage); Slamma Jamma (Michael Irvin, Jose Canseco) for Sony Pictures; '20 Minutes' that was released in theaters in March 2023.

2. I am an alumnus of Harvard University and USC.

3. I am also an attorney in good standing with the California Bar for over 29 years.

4. I am of half Japanese and half Korean ancestry.

5. Our father George was a distinguished man who helped the city of LA by creating a bank to serve and assist all members of the community, and raising millions of dollars for the Good Samaritan Hospital as the advisor to the president. He was also a devout man of faith, who did all he could to serve the Southern California community at large.

6. This is a shocking and deplorable case that takes 'fraud and deceit' to a new low for any bank.

7. J.P. Morgan Securities and Chase Bank both refused to help our father get his funds out to help with his medical care during the worst of times.

8. Or or about June 2021 to August 2021, my father George began to fall to the ground and went to the hospital where they uncovered 4th stage stomach and pancreatic cancer.

613)     He needed full-time caregivers if he were to stay in his house. This medical care cost over $16,000 a month between two of the caregivers.

614)     I loved my dad. He paid for my education in film school at USC and at Harvard and law school. He was always there for me. He never missed any of graduations or film premieres.

615)     Immediately my brother Victor and I began doing deep dives into George's accounts and saw funds were available at Defendants J.P. Morgan Securities and JPMorgan Chase Bank.

616)     I'm a faith-based filmmaker and was not wealthy enough to handle this monthly expense. I'm also a pro-bono attorney helping ministries and did not make much as a normal lawyer would.

617)     Neither is my brother Victor who is a full-time pastor at a Baptist church.

618)     Our father was a distinguished man who helped the city of LA by creating a bank to serve and assist all members of the community, and raising millions of dollars for the Good Samaritan Hospital as the advisor to the president. He was also a devout man of faith who did all he could to serve the Southern California community at large. Their father was the chairman and founder of a NASDAQ-traded company

**Our Father Could Not Access Any Funds Out of Either JPMorgan Chase Bank or J.P. Morgan Securities as He Was Dying of 4th Stage Cancer**

619)     On or about September 27, 2021, my brother Pastor Victor and I took our elderly father George into the local Chase Bank to withdraw George's funds for George's medical care.

620)    We were immediately met by Defendant David Kim who knew and greeted elderly George.

621)    Defendant David Kim then asked to see our driver's licenses which we both thought odd.

622)    We gave Mr. Kim our IDs. He asked our dad George what he was doing at the bank and our Dad said he wanted to withdraw funds. Immediately, Mr. Kim's face dropped and he told us to come with him.

623)    We had to help our dad move in his walker as he stumbled to the floor several times at the house.

624)    Defendant Kim then had us and our father sit in his cubicle.

625)    Defendant Kim then asked what our dad what he wanted to do again.

626)    Baffled, our dad explained he needed funds for his full-time caregivers. I also piped in that George fell and needed care (not that anyone has to explain anything to a bank manager).

627)    Defendant Kim then strangely said he needed to get someone. He then came back with the branch manager Defendant Lacie Chey (no relation to us) who approached.

628)    Our dad again told Defendant Lacie that he needed cash out of his checking account to help with his health as he had cancer.

629)    Defendant Lacie looked at Defendant Kim and shook her head. She then told our dad she couldn't help.

630)    I then stood up and asked why.

631)    Defendant Lacie and Defendant Kim were both silent and then said if there's anything more they could do for us.

632)	"Are you saying our father is not allowed to get his funds out," my brother asked in disbelief.

633)	"That's correct," said Defendant Kim.

634)	Our father was heart-broken as they left the bank.

635)	**We were left stunned by the actions of Defendant Chase Bank.**

636)	Immediately upon getting home, I emailed Chase Bank to let them know what was going on.

637)	Instead of Defendant Chase Bank doing the right thing and getting our father his funds, the bank instead hired Greenberg Taurig a top litigation law firm in Century City, California to respond.

638)	Instead of Greenberg Taurig responding to try to resolve the issue, the Greenberg attorney tried to escalate the issue.

639)	In fact, Greenberg Taurig may have called the Welfare department as soon after a strange visitor came telling elderly George she was from the city's welfare department and someone had called in to have them come.

640)	If this is true, I will file a $100 million lawsuit against Greenberg Taurig and their attorneys.

641)	In the meantime, Victor and I had to find a way to pay for the full-time caregivers who were going to give care to our father by helping him to the bathroom among other important things.

642)	As elderly our father still had his JPMorgan Private Client accounts, George called his advisor but they did not return his calls.

643)	Next I tried. No one responded. The advisor's name was on the statement.

644)        I, as an attorney and having power of attorney, then emailed Dylan Fallik, an

attorney at JPMorgan Chase (See EXHIBIT A-1):

*"Law Firm" <lawfirmofconsumerjustice@activist.com>*
*"Fallik, Dylan" <dylan.fallik@jpmchase.com>*
*Sep 27, 2021 5:19:02 PM*
**Hi Mr./Ms. Fallik:**

**We have a very very serious problem on our hands.**

**I have the Power of Attorney for my father George S. Chey**

**The branch of Chase Private Client Group and the main banking branch have committed stark elder abuse – a complete violation of Caifornia law - by refusing to help us in any way - in fact, two of them just stood there refusing to help my elderly father to check on his acccount.**

**Then TODAY, we inquired with Chase Private Client Group - same branch office 1600 N. Vermont Ave, Hollywood CA 90027 (323 662 4126) and again same response - zero help.**

*The balance on the Chase/JP Morgan account is $503,000. This is NOT a small amount and my father desperately needs these funds to help with his costly health care. The Chase Private account is: 963-37178 You are welcome to call me anytime: 310 695 7119 - but this must be resolved by next Monday, October 4, 2021 or I will be forced to file an Ex Parte Application with the LA Superior Court which would be the most severely ridiculous action I've ever filed in my 27 years of practicing litigation law.*

*Very truly yours,*
*Timothy A. Chey, Esq*
*Attorney at Law*
*Law Offices of Consumer Justice*
*Arco Tower*
*1055 West 7th Street*
*33rd Floor (Penthouse)*
*Downtown LA, CA 90017*

645)        Chase Bank then hired Greenberg Taurig and Counsel Karin Bolmholdt refused

my demand to open his father's account so his dying dad could access the funds for his

caregivers.

646)      Ms. Bolmholt – instead of defusing the situation and finding a solution to get a dying man his funds – kept emailing me to stop communicating with the Chase office – it was a playbook out of a typical non-caring attorney defending her Fortune 500 client. It was beyond litigation privilege but a malicous act against a dying elderly man (see EXHIBIT F).

647)      I had to help our dying father and had no choice but to email an Ex Parte notice to Chase Bank and Attorney Bolmholt. I should never had had to do this.

648)      In the meantime, someone at either Chase Bank or Greenberg Taurig – the most vicious and despicable means – actually called the LA Welfare Department and had a representative actually come to the elderly George residence because she received a call of possible elder abuse.

649)      It was an astonishing and vile act. Defendants were committing elder abuse and actually tried to deflect it by accusing my brother and me of elder abuse.

650)      More discovery will determine who called the LA Welfare office and whoever did will be added to this lawsuit including Greenberg Taurig if this firm called and falsely reported elder abuse.

651)      On October 14, 2022 – more than 3 weeks since JPMorgan Chase first learned of this dire situation -  Ms. Bolmholt wrote that Chase Bank wished to terminate its banking relationship with our father for no reason and that I was not allowed to enter any Chase Bank (see Exhibit G).

652)      It was the most outrageous and horrific day in the life of both my father and myself. No one deserves this treatment especially from a large publically-traded bank.

653)      On February 14, 2022, my father passed away a heartbroken man.

654)     It took me a long time to get over this and forgive Karin Bolmholdt, David Kim, and Lacie Chey.

655)     As a born-again Christian, I had to forgive them.

656)     But still justice must be done to protect other elderly seniors from being abused.

657)     These horrific actions by banks must end.

658)     Plaintiffs understand the need to protect against scammers but banks cannot and do not have any powers to tell family members of a dying man they could be possible scammers.

**On or about July 2022, Plaintiffs Realized They were Being Defrauded By Chase Bank and JPMorgan Private Client**

659)     On or about July 2022, I began to realize we were being defrauded in a massive fraud by Chase Bank and JP Morgan Private Client.

660)     We also discovered more JP Morgan Chase documents that showed massive amounts in the millions down to zero.

**Our Father Died While J.P. Morgan Securities Still Withheld His Funds**

661)     Our father died a heartbroken man due to actions of JP Morgan.

662)     I truly believe their father would have lived longer but for the incessant abuse of which Defendant J.P. Morgan Securities helped contribute to this financial and physical elder abuse by refusing to our father his money.

663)     During the next several weeks, I had to deal with the most outrageous stall tactics by Defendant J.P. Morgan Securities to simply get our father's statements.

664)      I spend countless hours during the four months – maybe over 150 hours – to simply help our father. My father again would die two months later – a heartbroken man due to J.P. Morgan Securities's greed and unending torment to access his funds.

**Defendant J.P. Morgan Securities has a History of Abuse Towards its Loyal Customers**

665)      This is not the first time Defendant J.P. Morgan Securities flipped off their loyal customers.

666)      JPMorgan Chase's involvement in major fraud scandals has left a lasting mark on its reputation and the financial industry as a whole. The bank's participation in facilitating the deceptive practices of Enron, Jeffrey Epstein, WorldCom, and Bernie Madoff's Ponzi scheme underscores broader issues of corporate governance and ethical responsibility within the banking sector.

667)      JP Morgan Chase has been sued multiple times for elder abuse since 2000.

668)      On or about November 20, 2022, Plaintiff Tim again sent J.P. Morgan Securities another email to plead with them to send all the statements from their elderly father. Plaintiff Tim felt J.P. Morgan Securities was again defrauding Tim by stallling and delaying.

669)      Plaintiff Tim will be filing a complaint with the U.S. Department of Justice after this Complaint is filed.

670)      It gets worse still.

9.   There is zero excuse what Defendant J.P. Morgan Securities, JPMorgan Chase Bank, and Defendant David Kim and Lacie Chey did to a dying man.

10. The Defendant's actions caused enormous actual damages and severe emotional distress to elderly George and my brother and myself

11. The Defendants violated every conflict of interest regulation of the California Banking code and the California Business and Professions code on multiple counts.

12. I strongly believe this complaint is a just and fair way to seek remuneration and hopefully legitimate changes in the behavior and methods of unscrupulous, greedy, and dishonest banks in the LA metropolitan area and the U.S. and seek justice in the courts in front of an Honorable Judge and a fair jury.

13. This is simply an outrageous and shocking example of Defendants unethical greed and illegal disregard for the best interests of their client, a textbook case of conflict of interest, and the very reason there are laws preventing this very thing from happening to innocent customers of large banks.

14. Our father George died a broken man in 2022 as a direct result of Defendant's actions, in addition extreme emotional distress of not being able to access his funds at either JP MORGAN SECURITIES or JPMORGAN CHASE BANK. He needed these funds to survive.

15. Our family was deprived of their legal rights and possibly their constitutional rights to be free from being defrauded by losing their precious father for no reason other than Defendants were greedy and refused to help a dying man. There's no other way to phrase this.

16. Defendants have never apologized for their conduct and remain unapologetic.

17. The Honorable Court must not allow Defendants to walk away from this, callous, illegal, and unethical behavior.

18. We are trustees of the George Chey Living Trust.

19. Defendant's counsel did not answer the final email.

20. On December 22, 2022, I sent a subpoena to J.P. Morgan Securities and J.P. Morgan Securities refused to send any documents to Plaintiff Tim.

21. <u>As to date, J.P. Morgan Securities has not responded with any documents.</u>

22. <u>Defendants never apologized for their scam.</u>

23. <u>This is the height of the Defendant's quick schemes to get quick money at the expense of their fiduciary responsiblities for their clients.</u>


I declare under penalty of perjury under the laws of this Honorable Court that the foregoing is true and correct. I understand that pejury is a criminal offense in the State of California

Executed on September 18, 2024, at Los Angeles, CA

Timothy Chey

Declarant

## **VERIFICATION**

I, TIMOTHY CHEY, am a declarant in the above-entitled matter. I have read the foregoing:

### **TIMOTHY A. CHEY DECLARATION**

and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

Executed on September 18, 2024, at Los Angeles, California.

I declare (or certify) under penalty of perjury that the foregoing is true and correct.

_____

TIMOTHY A. CHEY, Declarant

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A



# Re: George Chey vs. Chase Bank / JP Morgan in the LA Superior Court

**From:**    "Law Firm" <lawfirmofconsumerjustice@activist.com>
**To:**    "Fallik, Dylan" <dylan.fallik@jpmchase.com>
**Bcc:**    "susanc7490gmail.com" <susanc7490@gmail.com>, victor949@gmail.com
**Date:**    Sep 27, 2021 5:19:02 PM

**FOR SETTLEMENT PURPOSES ONLY**

Hi Mr./Ms. Fallik:

We have a very very serious problem on our hands.

I have the Power of Attorney for my father George S. Chey

The branch of Chase Private Client Group and the main banking branch have committed stark elder abuse - a complete violation of Caifornia law - by refusing to help us in any way - in fact, two of them just stood there refusing to help my elderly father to check on his acccount.

Then TODAY, we inquired with Chase Private Client Group - same branch office 1600 N. Vermont Ave, Hollywood CA 90027 (323 662 4126) and again same response - zero help.

Every employee at the 1600 N. Vermont location should be fired (https://www.yelp.com/biz/chase-bank-hollywood-5)

The balance on the Chase/JP Morgan account is $503,000. This is NOT a small amount and my father desperately needs these funds to help with his costly health care. The Chase Private account is: 963-37178

You are welcome to call me anytime: 310 695 7119 - but this must be resolved by next Monday, October 4, 2021 or I will be forced to file an Ex Parte Application with the LA Superior Court which would be the most severely ridiculous action I've ever filed in my 27 years of practicing litigation law.

Very truly yours,

Timothy A. Chey, Esq
Attorney at Law

Law Offices of Consumer Justice
Arco Tower
1055 West 7th Street
33rd Floor (Penthouse)
Downtown LA, CA 90017
Tel: 424 388 0058
Fax: 424 388 0099

> **Sent:** Friday, September 24, 2021 at 12:05 PM
> **From:** "Fallik, Dylan" <dylan.fallik@jpmchase.com>
> **To:** "'lawfirmofconsumerjustice@activist.com'" <lawfirmofconsumerjustice@activist.com>
> **Subject:** George Chey

Mr. Chey,

I'm advised that you have some concerns about your father's accounts with Chase, however I'm not entirely clear on what those concerns are; would you be available to discuss on Monday? If so, please give me the best number to reach you.

You should know that because you're not a signer on these accounts, I'm not able to divulge any information, however once I understand what's going on I can look into any issues you raise and see what the situation is. I understand that you have a POA for your father and a legal guardianship- is that right?

I look forward to discussing, and have a great weekend.

*Dylan Fallik*

Assistant General Counsel

JPMorgan Chase Bank, N.A.

1111 Polaris Parkway, Suite 4P

Columbus, OH 43240

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

# EXHIBIT B



# Chey vs. JP Morgan Chase - URGENT: Ex Parte Hearing FRIDAY, OCTOBER 1, 2021 at 8:30 am in the LA Superior Court

| | |
|---|---|
| **From:** | "Law Firm" <lawfirmofconsumerjustice@activist.com> |
| **To:** | dylan.fallik@jpmchase.com |
| **Bcc:** | "susanc7490gmail.com" <susanc7490@gmail.com>, victor949@gmail.com |
| **Date:** | Sep 27, 2021 11:04:18 PM |

Dear Mr./Ms. Fallik:

You are on notice for an **Ex Parte Hearing FRIDAY, OCTOBER 1, 2021 at 8:30 am in the LA Superior Court.**

I will be seeking an Ex Parte Motion and TRO to force Chase Bank to allow all access to all our bank accounts and restrain Mr. David Kim and Luxie Chey - managers at the local branch (1600 N. Vermont Ave, Hollywood, CA 90027) from interfering with our father George Chey's account.

**Chase Bank Account Numbers are:**



I will be seeking an Ex Parte Motion and TRO to force Chase Bank Private Client Group / JP Morgan to allow all access to our Chase Private Client account.

**Chase Private Client Group / JP Morgan Clearing Corp (JPMCC) Account is:**

**Balance is $503,449.84**
**Advisor is Ronald Bibonia (no longer there); no one has helped. Same branch: 1600 N. Vermont Ave, LA, CA 90027**

**I believe there is an inside criminal operation going on at this small Hollywood location branch.**

As per LASC LR 9.9(a)(amended eff 7/1/09), please know we have an *ex parte* hearing set for:

**Friday, October 1, 2021**
**Los Angeles Superior Court**
**Stanley Mosk Courthouse**
**111 N. Hill Street**
**Los Angeles, CA 90012**
**8:30 am**
**Dept 85/86**

I will also be filing a lawsuit against all defendants for elder abuse, RICO violations, unlawful discrimination, Civil Rights Act violations, fraud and deceit, intentional and negligent misrepresentation, civil conspiracy and a unspecified damages in addition to the ***Ex-Parte Declaration and Injunction*** against all parties. I will also be filing possible criminal charges against branch managers David Kim and Luxie Chey for elder abuse, civil conspiracy, and fraud and deceit.

You will also pay for all legal fees.

Under CRC 3.1204(a), I am to also ask you who your counsel will be to oppose the motion.

I have emailed you this notice and also will call you on the phone to guarantee that I do not run afoul of the notice requirement for ex parte motions.

Please have your attorneys call me if you wish to resolve: 310 695 7119.

This is a very gravely serious matter.

Very truly yours,

Timothy Chey, Esq
Attorney at Law

Law Offices of Consumer Justice
Arco Tower
1055 West 7th Street
33rd Floor (Penthouse)
Downtown LA, CA 90017
Tel: 424 388 0058
Fax: 424 388 0099

---

**Sent:** Monday, September 27, 2021 at 2:19 PM
**From:** "Law Firm" <lawfirmofconsumerjustice@activist.com>
**To:** "Fallik, Dylan" <dylan.fallik@jpmchase.com>
**Subject:** Re: George Chey vs. Chase Bank / JP Morgan in the LA Superior Court

**FOR SETTLEMENT PURPOSES ONLY**

Hi Mr./Ms. Fallik:

We have a very very serious problem on our hands.

I have the Power of Attorney for my father George S. Chey

The branch of Chase Private Client Group and the main banking branch have committed stark elder abuse - a complete violation of Caifornia law - by refusing to help us in any way - in fact, two of them just stood there refusing to help my elderly father to check on his acccount.

Then TODAY, we inquired with Chase Private Client Group - same branch office 1600 N. Vermont Ave, Hollywood CA 90027 (323 662 4126) and again same response - zero help.

Every employee at the 1600 N. Vermont location should be fired (https://www.yelp.com/biz/chase-bank-hollywood-5)

The balance on the Chase/JP Morgan account is $503,000. This is NOT a small amount and my father desperately needs these funds to help with his costly health care. The Chase Private account is: 963-37178

You are welcome to call me anytime: 310 695 7119 - but this must be resolved by next Monday, October 4, 2021 or I will be forced to file an Ex Parte Application with the LA Superior Court which would be the most severely ridiculous action I've ever filed in my 27 years of practicing litigation law.

Very truly yours,

Timothy A. Chey, Esq
Attorney at Law

Law Offices of Consumer Justice
Arco Tower
1055 West 7th Street
33rd Floor (Penthouse)
Downtown LA, CA 90017

Tel: 424 388 0058
Fax: 424 388 0099

**Sent:** Friday, September 24, 2021 at 12:05 PM
**From:** "Fallik, Dylan" <dylan.fallik@jpmchase.com>
**To:** "'lawfirmofconsumerjustice@activist.com'" <lawfirmofconsumerjustice@activist.com>
**Subject:** George Chey

Mr. Chey,

I'm advised that you have some concerns about your father's accounts with Chase, however I'm not entirely clear on what those concerns are; would you be available to discuss on Monday? If so, please give me the best number to reach you.

You should know that because you're not a signer on these accounts, I'm not able to divulge any information, however once I understand what's going on I can look into any issues you raise and see what the situation is. I understand that you have a POA for your father and a legal guardianship- is that right?

I look forward to discussing, and have a great weekend.

*Dylan Fallik*

Assistant General Counsel

JPMorgan Chase Bank, N.A.

1111 Polaris Parkway, Suite 4P

Columbus, OH 43240

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

# EXHIBIT C



# 4th DEMAND: Fw: Chey vs. JP Morgan Chase - URGENT: Ex Parte Hearing FRIDAY, OCTOBER 1, 2021 at 8:30 am in the LA Superior Court

**From:**    "Law Firm" <lawfirmofconsumerjustice@activist.com>

**To:**    dylan.fallik@jpmchase.com, "Weddington, Jane H" <jane.h.weddington@jpmchase.com>

**Date:**    Sep 29, 2021 4:00:15 AM

Memo to the Court:

Ahead of the Ex Parte Motion, I am writing to the Court.

This is the 4th demand that Chase Bank release the block on my client's bank accounts.

I believe Mr. David Kim - the local bank manager - has committed a criminal crime of elder abuse and fraud by falsely reporting this account to Global Security for no reason other than he is a pathological man. He will be named as a defendant in the upcoming lawsuit.

This is also the 5th demand to release information as to the JP Morgan / Chase Private Client account that holds $505,000.

Please IMMEDIATELY open the accounts so my client can withdraw desperately needed funds for his medical care. HE IS DYING OF 4TH STAGE CANCER and needs private care.

Very truly yours,

Timothy A. Chey, Esq
Attorney at Law

Law Offices of Consumer Justice
Arco Tower
1055 West 7th Street
33rd Floor (Penthouse)
Downtown LA, CA 90017
Tel: 424 388 0058
Fax: 424 388 0099

> **Sent:** Monday, September 27, 2021 at 8:04 PM
> **From:** "Law Firm" <lawfirmofconsumerjustice@activist.com>
> **To:** dylan.fallik@jpmchase.com
> **Subject:** Chey vs. JP Morgan Chase - URGENT: Ex Parte Hearing FRIDAY, OCTOBER 1, 2021 at 8:30 am in the LA Superior Court
>
> Dear Mr./Ms. Fallik:
>
> You are on notice for an **Ex Parte Hearing FRIDAY, OCTOBER 1, 2021 at 8:30 am in the LA Superior Court**.
>
> I will be seeking an Ex Parte Motion and TRO to force Chase Bank to allow all access to all our bank accounts and restrain Mr. David Kim and Luxie Chey - managers at the local branch (1600 N. Vermont

Ave, Hollywood, CA 90027) from interfering with our father George Chey's account.

**Chase Bank Account Numbers are:**
**000000413646790**
**000003010964350**

I will be seeking an Ex Parte Motion and TRO to force Chase Bank Private Client Group / JP Morgan to allow all access to our Chase Private Client account.

**Chase Private Client Group / JP Morgan Clearing Corp (JPMCC) Account is:**
**#963-37178**
**Balance is $503,449.84**
**Advisor is Ronald Bibonia (no longer there); no one has helped. Same branch: 1600 N. Vermont Ave, LA, CA 90027**

**I believe there is an inside criminal operation going on at this small Hollywood location branch.**

As per LASC LR 9.9(a)(amended eff 7/1/09), please know we have an *ex parte* hearing set for:

**Friday, October 1, 2021**
**Los Angeles Superior Court**
**Stanley Mosk Courthouse**
**111 N. Hill Street**
**Los Angeles, CA 90012**
**8:30 am**
**Dept 85/86**

I will also be filing a lawsuit against all defendants for elder abuse, RICO violations, unlawful discrimination, Civil Rights Act violations, fraud and deceit, intentional and negligent misrepresentation, civil conspiracy and a unspecified damages in addition to the ***Ex-Parte Declaration and Injunction*** against all parties. I will also be filing possible criminal charges against branch managers David Kim and Luxie Chey for elder abuse, civil conspiracy, and fraud and deceit.

You will also pay for all legal fees.

Under CRC 3.1204(a), I am to also ask you who your counsel will be to oppose the motion.

I have emailed you this notice and also will call you on the phone to guarantee that I do not run afoul of the notice requirement for ex parte motions.

Please have your attorneys call me if you wish to resolve: 310 695 7119.

This is a very gravely serious matter.

Very truly yours,

Timothy Chey, Esq
Attorney at Law

Law Offices of Consumer Justice
Arco Tower
1055 West 7th Street
33rd Floor (Penthouse)
Downtown LA, CA 90017
Tel: 424 388 0058
Fax: 424 388 0099

> **Sent:** Monday, September 27, 2021 at 2:19 PM
> **From:** "Law Firm" <lawfirmofconsumerjustice@activist.com>
> **To:** "Fallik, Dylan" <dylan.fallik@jpmchase.com>
> **Subject:** Re: George Chey vs. Chase Bank / JP Morgan in the LA Superior Court

**FOR SETTLEMENT PURPOSES ONLY**

Hi Mr./Ms. Fallik:

We have a very very serious problem on our hands.

I have the Power of Attorney for my father George S. Chey

The branch of Chase Private Client Group and the main banking branch have committed stark elder abuse - a complete violation of Caifornia law - by refusing to help us in any way - in fact, two of them just stood there refusing to help my elderly father to check on his acccount.

Then TODAY, we inquired with Chase Private Client Group - same branch office 1600 N. Vermont Ave, Hollywood CA 90027 (323 662 4126) and again same response - zero help.

Every employee at the 1600 N. Vermont location should be fired (https://www.yelp.com/biz/chase-bank-hollywood-5)

The balance on the Chase/JP Morgan account is $503,000. This is NOT a small amount and my father desperately needs these funds to help with his costly health care. The Chase Private account is: 963-37178

You are welcome to call me anytime: 310 695 7119 - but this must be resolved by next Monday, October 4, 2021 or I will be forced to file an Ex Parte Application with the LA Superior Court which would be the most severely ridiculous action I've ever filed in my 27 years of practicing litigation law.

Very truly yours,

Timothy A. Chey, Esq
Attorney at Law

Law Offices of Consumer Justice
Arco Tower
1055 West 7th Street
33rd Floor (Penthouse)
Downtown LA, CA 90017
Tel: 424 388 0058
Fax: 424 388 0099

> **Sent:** Friday, September 24, 2021 at 12:05 PM
> **From:** "Fallik, Dylan" <dylan.fallik@jpmchase.com>
> **To:** "'lawfirmofconsumerjustice@activist.com'" <lawfirmofconsumerjustice@activist.com>
> **Subject:** George Chey
>
> Mr. Chey,
>
> I'm advised that you have some concerns about your father's accounts with Chase, however I'm not entirely clear on what those concerns are; would you be available to discuss on Monday?  If so, please give me the best number to reach you.
>
>
>
> You should know that because you're not a signer on these accounts, I'm not able to divulge any information, however once I understand what's going on I can look into any issues you raise and see what the situation is.  I understand that you have a POA for your father and a legal guardianship- is that right?
>
>
>
> I look forward to discussing, and have a great weekend.

*Dylan Fallik*

Assistant General Counsel

JPMorgan Chase Bank, N.A.

1111 Polaris Parkway, Suite 4P

Columbus, OH 43240

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

# EXHIBIT D



# Re: Chase Bank

| | |
|---|---|
| **From:** | "Law Firm" <lawfirmofconsumerjustice@activist.com> |
| **To:** | BohmholdtK@gtlaw.com |
| **Date:** | Sep 29, 2021 2:11:39 PM |

Dear Ms. Bohmholdt:

Attached is the power of attorney.

I have now asked your client 6 TIMES to open my father's account and let him withdraw desperately needed funds for his medical treatment.

I can also have my brother who is a pastor take my father to the branch.

As my father is dying, if you do anything to thwart my father's health, I will file a complaint with the State Bar to have you disbarred.

Very truly yours,

Timothy Chey, Esq
Attorney at Law

Law Offices of Consumer Justice
Arco Tower
1055 West 7th Street
33rd Floor (Penthouse)
Downtown LA, CA 90017
Tel: 424 388 0058
Fax: 424 388 0099

> **Sent:** Wednesday, September 29, 2021 at 9:43 AM
> **From:** BohmholdtK@gtlaw.com
> **To:** lawfirmofconsumerjustice@activist.com
> **Subject:** Chase Bank
>
> # Dear Mr. Chey,
>
> My office has been engaged to represent Chase with respect to your dispute regarding your father, George Chey. Please let me know when you are available to speak, and you are advised that all further correspondence and communication regarding this matter must be directed to me and not my client.

Thank you, and I look forward to hearing from you.


**Karin Bohmholdt**
Shareholder


Co-Chair, Los Angeles Litigation


Greenberg Traurig, LLP
1840 Century Park East
Suite 1900 | Los Angeles, CA 90067-2121
T +1 310.586.3819  |  F +1 310.586.0518
BohmholdtK@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

---

**Attachments**

- image-png-attachment
- POWER OF ATTORNEY - GEORGE CHEY.pdf

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**   JPMORGAN CHASE BANK, N.A., a
*(AVISO AL DEMANDADO):* business entity; J.P. MORGAN
SECURITIES, LLC; "Additional Parties
Attachment form is attached."

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Victor Chey, Timothy Chey

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

Electronically FILED by
Superior Court of California,
County of Los Angeles
9/23/2024 1:19 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO!* Lo han demandado.  Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

LOS ANGELES SUPERIOR COURT
STANLEY MOSK COURT HOUSE
111 N. Hill St, Los Angeles, CA 90012

CASE NUMBER:
*(Número del Caso):*

24STCV24607

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Timothy Chey, Esq, 2121 Ave of the Stars, Century City, CA 90067; 424
388-0058; LawFirmofConsumerJustice@aol.com

David W. Slayton, Executive Officer/Clerk of Court

DATE:   09/23/2024                                          Clerk, by _____, Deputy
*(Fecha)*                                                *(Secretario)*        E. Galicia        *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)

          ☐ other *(specify):*
4. ☒ by personal delivery on *(date):*

Page 1 of 1

**SUM-200(A)**

| SHORT TITLE: Chey<br>vs. Chase Bank | CASE NUMBER:<br>24STCV24607 |
|---|---|

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

J.P. MORGAN CLEARING CORP.; DAVID KIM; LACIE CHEY, and DOES 1 through 10 inclusive,

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>09/23/2024<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ E. Galicia _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>24STCV24607 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Kevin C. Brazile | 20 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 09/23/2024
    (Date)

David W. Slayton, Executive Officer / Clerk of Court

By E. Galicia _____, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

LACIV 190 (Rev 6/18)
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**



# Superior Court of California, County of Los Angeles

<div style="border:1px solid; background:#e0e0e0; padding:10px;">

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

</div>

**What is ADR?**
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

**Advantages of ADR**
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

**Disadvantages of ADR**
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or decision by a judge or jury.

**Main Types of ADR**
1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

      **Mediation may be appropriate when the parties**
- want to work out a solution but need help from a neutral person.
- have communication problems or strong emotions that interfere with resolution.

      **Mediation may <u>not</u> be appropriate when the parties**
- want a public trial and want a judge or jury to decide the outcome.
- lack equal bargaining power or have a history of physical/emotional abuse.

**How to Arrange Mediation in Los Angeles County**

Mediation for **civil cases** is voluntary and parties may select any mediator they wish.  Options include:

    a.  **The Civil Mediation Vendor Resource List**
        If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

        • **ADR Services, Inc.** Assistant Case Manager Janet Solis, janet@adrservices.com (213) 683-1600
        • **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

        **These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept.  Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

        **NOTE:  The Civil Mediation Vendor Resource List program does not accept family law, probate, or small claims cases.**

    b.  **Los Angeles County Dispute Resolution Programs.**  Los Angeles County-funded agencies provide mediation services on the day of hearings in small claims, unlawful detainer (eviction), civil harassment, and limited civil (collections and non-collection) cases. https://dcba.lacounty.gov/countywidedrp/

        **Online Dispute Resolution (ODR).**  Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.  https://my.lacourt.org/odr/

    c.  Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3.  **Arbitration:**  Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome.  In "binding" arbitration, the arbitrator's decision is final; there is no right to trial.  In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.  For more information about arbitration, visit https://www.courts.ca.gov/programs-adr.htm

4.  **Mandatory Settlement Conferences (MSC):**  MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit https://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website:  https://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
**Stanley Mosk Courthouse**
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF:
Victor Chey  et al

DEFENDANT:
JPMORGAN CHASE BANK, N.A.,, et al.

### NOTICE OF CASE MANAGEMENT CONFERENCE

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

10/10/2024

David W. Slayton, Executive Officer / Clerk of Court

By: _____ C. Cortez _____ Deputy

CASE NUMBER:
24STCV24607

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

> Date: 02/26/2025    Time: 8:30 AM    Dept.: 20

NOTICE TO DEFENDANT:    THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 10/10/2024 _____

_____
Judicial Officer
Kevin C. Brazile / Judge

---

### CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in Los Angeles _____, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Timothy Chey
2121 Ave of the stars 8th floor
Century City, CA 90067

David W. Slayton, Executive Officer / Clerk of Court

By C. Cortez _____
Deputy Clerk

Dated: 10/10/2024 _____

# NOTICE OF
# CASE MANAGEMENT CONFERENCE

LASC LACIV 132 Rev. 01/23
For Optional Use

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter 7KUHH

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

COURTHOUSE ADDRESS:

Stanley Mosk Courthouse

111 North Hill Street, Los Angeles, CA 90012

**FILED**
Superior Court of California
County of Los Angeles

10/10/2024

David W. Slayton, Executive Officer / Clerk of Court

By: _____ C. Cortez _____ Deputy

PLAINTIFF(S):

Victor Chey  et al

DEFENDANT(S):

JPMORGAN CHASE BANK, N.A.,, et al.

| **ORDER TO SHOW CAUSE HEARING** | CASE NUMBER: |
| | 24STCV24607 |

To the party / attorney of record:

You are ordered to appear for an Order to Show Cause Hearing on <u>02/26/2025</u> at <u>8:30 AM</u> in department <u>20</u> of this court, <u>Stanley Mosk Courthouse</u>, and show cause why sanctions should not be imposed for:

[✔]    Failure to file proof of service.

Failure to comply or appear may result in sanctions pursuant to one or more of the following: California Rules of Court, rule 2.30 and rule 3.1340; Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.310, 583.360, 583.410, 583.420, 583.430; and Government Code section 68608.

[✔]    To avoid a mandatory appearance all required documents must be filed at least 5 days prior to the date of the hearing.

Dated: <u>10/10/2024</u>

_____
Kevin C. Brazile / Judge
Judicial Officer

**ORDER TO SHOW CAUSE HEARING**

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

10/10/2024

David W. Slayton, Executive Officer / Clerk of Court

By: _____ C. Cortez _____ Deputy

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF/PETITIONER:
Victor Chey  et al

DEFENDANT/RESPONDENT:
JPMORGAN CHASE BANK, N.A.,, et al.

## CERTIFICATE OF MAILING

CASE NUMBER:
24STCV24607

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Order to Show Cause Failure to File Proof of Service upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Timothy Chey
LAW FIRM OF CONSUMER JUSTICE
2121 Ave of the stars 8th floor
Century City, CA 90067

David W. Slayton, Executive Officer / Clerk of Court

Dated: <u>10/10/2024</u>

By: <u>  C. Cortez  </u>
Deputy Clerk